IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DEANA WATSON, *as Independent Administrator of the Estate of* CLAUDE GARRETT*, deceased*,<br><br>Plaintiff,<br><br>v.<br><br>Current and/or Former Nashville Metropolitan Fire Department Marshalls KENNETH PORTER, OTIS JENKINS, and PATRICK HUNT, Current and/or Former Nashville Metropolitan Police Officers WILLIAM MICHAEL ROLAND, DAVID MILLER, and DESMOND CARTER, Current and/or Former ATF Agent JAMES COOPER, and THE UNITED STATES OF AMERICA,<br><br>Defendants. | ) | Case No.: 3:23-cv-00456<br>JUDGE RICHARDSON<br>MAGISTRATE JUDGE FRENSLEY |

**<u>JOINT MOTION FOR DISCOVERY DISPUTE CONFERENCE REGARDING PLAINTIFF'S SOCIAL MEDIA ACCOUNTS AND CLAUDE GARRETT'S CELLPHONE</u>**

In accordance with the operative scheduling order, D.E. 55, and pursuant to Local Rule 37.01, the United States and Plaintiff jointly moved the Court to schedule a discovery conference to resolve several disputes that have arisen during discovery. In accordance with paragraph G of the scheduling order, D.E. 55 at 3, PageID# 314–15, the parties certify that lead counsel for the United States and for Plaintiff have conferred by telephone and made a good faith effort to resolve this dispute. Pursuant to the same paragraph of the scheduling order and Local Rule 7.01, the parties adopt their statements below for briefing purposes.

Defendants Porter, Jenkins, Hunt, Roland, Miller, and Carter's (collectively, the "Metro Defendants") position on this dispute is that they are also prejudiced by the Plaintiff's actions, and that the matter has been fully briefed by the United States and the Plaintiff. Defendant Cooper joins the United States's motion.

## I. Background & Efforts at Resolution

This dispute concerns two categories of information: Plaintiff Deana Watson's social media, and Claude Garrett's cellphone. On November 17, 2023, the United States served Requests for Admission, Interrogatories, and Requests for Production of Documents on Plaintiff. After agreed-upon extensions, Plaintiff responded to Interrogatories and Requests for Admission on February 7, 2024. Plaintiff responded to Requests for Production on February 16, 2024. This motion concerns only the United States's Requests for Production, and thus Plaintiff's responses to those requests are attached as Exhibit A.

The United States deposed Plaintiff on March 20, 2024. Following that deposition, on March 21, 2024, the United States sent counsel for the Plaintiff a discovery deficiency letter, which is attached as Exhibit B. Counsel for the Plaintiff responded to this letter on March 28, 2024, and that letter is attached as Exhibit C. On March 29, 2024, lead counsel for Plaintiff and for the United States held a telephone conference to discuss the disputes in the letters. On April 4, 2024, counsel for the Plaintiff sent a follow-up letter, attached as Exhibit D, and made a production associated with some of the disputed requests. This motion concerns some of the disputes from that sequence of letters and phone calls that are still outstanding.

For ease of reference, the discovery requests propounded by the United States that are in dispute are reproduced below with Plaintiff's responses.

> *Request No. 3*. To the extent not produced in your answer to request No. 1 above, please produce the original or legible copies of all documents (including written or transcribed statements) that you have received from or provided to individuals who have knowledge of facts relevant to this case or whom you intend to call as witnesses, expert or otherwise, if there is a hearing in this matter, or rely on to prove your case. This request includes any email sent by you or on your behalf from any personal email account.
> *Response*: Plaintiff objects to this Request on the basis that it is overly broad and vague. Plaintiff further objects to this Request to the extent that it is premature. Plaintiff will disclose information related to retained experts as required by Rule 26 in accordance with the schedule set by the Court.

> *Request No. 7*. To the extent not produced in your answer to requests No. 1 or No. 3 above, produce all documents from your social media accounts pertaining to your father's incarceration or the claims in this case, including all documents, videos, posts, direct messages, and materials from the social media account "The Exoneree's Daughter" and any other accounts you own or control on any social media platform, including Instagram, X (formerly known as Twitter), or TikTok.
> *Response*: Plaintiff objects to this Request on the basis that it is vague, overly broad, and unduly burdensome. Without waiving and subject to the foregoing objection, to the extent they are responsive, Plaintiff's Facebook posts related to her father and his wrongful conviction are available to the public on her Facebook account under her name, "Deana Watson." Responding further, Plaintiff's Instagram posts related to her father and his wrongful conviction are available to the public on her Instagram account under the user name "deana_watson." Responding further, Plaintiff posted videos primarily related to her experience of having a father wrongfully convicted to a TikTok account named, "The Exoneree's Daughter." On approximately October 27, 2023, before these Requests were issued, Plaintiff deleted the videos. Plaintiff is in the process of trying to retrieve them. The videos will be produced if they can be recovered. Plaintiff will search her direct messages for additional responsive documents, and she will produce them through Plaintiff's counsel if and when she locates any.
>
> *Request No. 10*: Please produce the original or legible copies of any journals, diaries, chronologies, personal essays, and personal calendars (with any notations on such) created by Claude Garrett that pertain to any claim in this case.
> *Response*: Plaintiff objects to this Request to the extent it could be construed as requesting confidential written communications between Claude Garrett and his attorneys which are protected by attorney-client privilege. Plaintiff will produce a privilege log describing the nature of any documents responsive to this Request that are being withheld based on privilege. Without waiving and subject to the foregoing objection, see Zellner4369. Plaintiff's investigation continues.
>
> *Request No. 11*: Please produce any documents created by Claude Garrett that pertain to any claim in this case, including but not limited to any notes Mr. Garrett created discussing the alleged conspiracy in this case.
> *Response*: Plaintiff objects to this Request to the extent it could be construed as requesting confidential written communications between Claude Garrett and his attorneys which are protected by attorney-client privilege. Plaintiff will produce a privilege log describing the nature of any documents responsive to this Request that are being withheld based on privilege.

Exhibit A at 2–5.

## II. Joint Discovery Dispute Statement

The parties' respective positions are set forth below.

## A. The United States's Position

This dispute concerns two categories of relevant, discoverable evidence that Plaintiff has failed to account for and produce: her social media posts related to this case, and the content on her father's cellphone. Both categories of documents have been spoliated by Plaintiff, apparently on advice of counsel, after this case was filed. The facts underling this lawsuit have a long history, and what Plaintiff has said to her followers on social media—and by that same token, what her father had on his phone—about those facts is highly relevant to the presentation of her claims at trial. Plaintiff seeks to hold numerous law enforcement retirees responsible for conduct that allegedly occurred decades ago. Her own characterization of her experiences and of the facts of the case are self-evidently relevant and discoverable, particularly where Plaintiff has held herself out on social media with the moniker "The Exoneree's Daughter." Claude Garrett's cellphone could have contained notes on the case, messages with friends about his experiences, damages, and the claims in this case – but it is gone.

This motion concerns four overlapping requests for production quoted above: Requests 3, 7, 10, and 11 from the United States to Plaintiff. Plaintiff's social media posts and her father's cellphone would be responsive to a combination of these requests: 3, 10, and 11 for the cellphone, and 7 for the social media (and possibly 3 depending on the content of Plaintiff's direct messages).

### 1. Plaintiff disposed of Mr. Garrett's personal cellphone during the course of this litigation.

Plaintiff disposed of Mr. Garrett's personal cellphone during the course of this litigation. The United States did not learn about the existence of Claude Garrett's cellphone until the Plaintiff's deposition. Plaintiff testified that she mailed Mr. Garrett's cellphone back to AT&T several months before the deposition. Exhibit E (Watson Deposition Excerpts) at 215:22-217:9, 251:22-252:4. Instead of preserving relevant evidence, Plaintiff went through her father's phone,

gathered what she needed, let the phone sit in her glovebox for months, and disposed of it. Exhibit E at 253:16-256:4. When asked why she had disposed of the phone "a month or two ago [before the deposition]," Plaintiff testified, "Because I'm lazy, and I forget to do things. And then I get like a wild hare, and I do them all at once. I cancelled two of my cell phones, my Apple watch and all that stuff at the same time." *Id.*

The United States raised the cellphone in its March 21 letter. Exhibit B at 2, 5, 6. Counsel for the Plaintiff offered to seek a court order to access the AT&T data in its letter of March 28, but has not done so. Exhibit C at 5–7. Any attempt to do that after-the-fact was prompted by this dispute statement. Counsel also stated that they would produce messages between Mr. Garrett and Plaintiff in their letter of April 4, but only did so after this statement was circulated. Exhibit D at 1. Even if Plaintiff's correspondence with her father could be accessed from her devices, that search would necessarily exclude correspondence that was maintained solely on his cell phone.[1] Counsel also represented in that same letter that, "I have not had the chance to draft a motion regarding Mr. Garrett's cell phone texts and records. I will get to that in the near future." *Id.* at 5. In sum, Mr. Garrett's cellphone may not be recoverable, and counsel for the Plaintiff has not taken appropriate or promised steps to recover the data. A friend of Mr. Garrett and Plaintiff, Norman Bowen, appeared on the documentary *Reasonable Doubt* regarding Mr. Garrett's alleged innocence; his circle has been intimately involved in the progression of his case.

Parties to litigation must take basic steps to preserve evidence. *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008) ("It is the responsibility of the parties to ensure that relevant ESI is preserved, and when that duty is breached, a district court may exercise its authority to impose

[1] The undersigned circulated the United States's portion of this dispute statement on Friday, June 21, 2024. On Saturday, June 22, 2024, counsel for the Plaintiff produced text messages between Plaintiff and her father. But as noted above, this captures only a sliver of what the phone contained.

appropriate discovery sanctions."); D.E. 55 at 6, PageID# 317 ("The parties shall take reasonable steps to preserve discoverable ESI in the party's possession, custody, or control.").[2] The duty to preserve surely arose when Plaintiff and her lawyers filed this case, and possibly before.[3] *Siggers v. Campbell*, No. CIV.A. 07-12495, 2014 WL 4978648, at *3 (E.D. Mich. Mar. 25, 2014), *aff'd*, 2014 WL 4978655 (E.D. Mich. Oct. 6, 2014); *Barrette Outdoor Living, Inc. v. Michigan Resin Representatives*, No. 11-13335, 2013 WL 3983230, at *9 (E.D. Mich. Aug. 1, 2013) ("In most cases, the duty to preserve evidence is triggered by the filing of a lawsuit."). This duty was not fulfilled. *Paisley Park Enterprises, Inc. v. Boxill*, 330 F.R.D. 226, 234 (D. Minn. 2019) ("But parties are responsible for the conduct of their attorneys; an adverse party is not required to bear the burden of misconduct committed by the opposing side's counsel.").

Mr. Garrett's cellphone could have contained anything – notes on the case, text messages with friends that are not privileged concerning the defendants, or other discoverable information. Counsel for Plaintiff never sent Plaintiff a hold letter, and she testified she was unaware that parties to litigation generally have a duty to preserve evidence. Exhibit E at 136:4-23. This is a basic failure to preserve evidence and take meaningful steps to rectify the problem for months. This is impermissible under Fed. R. Civ. P. 37(e), which should guide this Court to remedy lost electronic evidence. That rule "requires a three-part showing: (1) electronically stored information that

---

[2] Because sending the phone back to the carrier violated the Court's case management order, it is sanctionable under Rule 37(b)(2) in addition to being sanctionable under Rule 37(e). *See generally Franklin v. Shelby Cnty. Bd. of Educ.*, No. 220CV02812JPMTMP, 2021 WL 5449005, at *4 (W.D. Tenn. Nov. 22, 2021) ("In cases from various jurisdictions, courts have imposed, or at least analyzed, sanctions regarding the same lost ESI under both Rule 37(b) and 37(e).").

[3] Given Plaintiff's testimony that her father engaged counsel for the Plaintiff before his death in October 2022, the duty likely arose before the complaint was even filed. Exhibit E at 73:3-74:22; 207:12-209:1. *Cf.* 4 BUS. & COM. LITIG. FED. CTS. § 33:26 (5th ed.) ("Parties are under a duty to preserve when there is a reasonable anticipation of litigation, regardless of whether they are the party bringing the litigation or anticipating having to respond to the litigation.").

should have been preserved in the anticipation or conduct of litigation was lost; (2) the party who had a duty to preserve the information failed to take reasonable steps to preserve it; and (3) the information cannot be restored or replaced through additional discovery." *Adamczyk v. Sch. Dist. of City of Hamtramck Pub. Sch.*, 667 F. Supp. 3d 534, 556 (E.D. Mich. 2023) (internal quotations and citation omitted). Even if some messages can be restored, counsel for the Plaintiff failed to take steps to preserve evidence (like sending a litigation hold letter), did not file a motion after stating they would, and failed to follow up. *Cf. Matter of In re Skanska USA Civ. Se. Inc.*, 340 F.R.D. 180, 189 (N.D. Fla. 2021) ("The Court finds the lack of any cogent explanation for these failures, other than 'oops,' points to one answer – Skanska acted in bad faith.") (lost cellphones). This situation satisfies all three elements for sanctions.

The United States has been prejudiced by this failure because there is no telling what was on Mr. Garrett's phone. The United States is left to speculate as to what exactly the phone contained; it was counsel for the Plaintiff's duty to see if the phone contained anything responsive. The phone could have contained notes on the case, non-privileged communications relevant to Mr. Garrett's knowledge of the facts of the complaint, or even communications with witnesses. The United States has been prejudiced. *Kean v. Brinker Int'l, Inc.*, No. 3:22-CV-00885, 2024 WL 1815346, at *11 (M.D. Tenn. Apr. 25, 2024 (noting that prejudice may be established by "plausible, concrete suggestions as to what [the destroyed] evidence might have been") (quoting *Yoe v. Crescent Sock Co.*, No. 1:15-CV-3-SKL, 2017 WL 5479932, at *11 (E.D. Tenn. Nov. 14, 2017), and other authority with same language from Federal and Third Circuits); *see also Milke v. City of Phoenix*, 497 F. Supp. 3d 442, 470 n.21 (D. Ariz. 2020), *aff'd*, 2022 WL 259937 (9th Cir. Jan. 27, 2022) ("Milke claims she did not destroy anything of value and Defendants cannot prove otherwise. But requiring Defendants definitively prove the non-prejudicial nature of something when the something has been destroyed is close to the logical fallacy *argumentum ad ignorantiam*.

That refers to the fallacy of putting the burden of proof on the person who denies or questions the assertion.") (emphasis in original). Plaintiff had a clear duty to preserve evidence and did not. Rule 37(e) contains several suggested remedies, and the Court has broad discretion.

The United States requests an adverse inference at trial under Rule 37(e)(2) that the trier of fact must presume the information on Mr. Garrett's phone was unfavorable to Plaintiff's case. *See, e.g.*, *Barrette Outdoor Living, Inc. v. Michigan Resin Representatives*, No. 11-13335, 2013 WL 3983230, at *15 (E.D. Mich. Aug. 1, 2013) (adverse inference regarding cell phone); *see also generally Schnatter v. 247 Grp., LLC*, No. 320CV00003BJBCHL, 2022 WL 2402658 (W.D. Ky. Mar. 14, 2022). This is an appropriate resolution – the United States attempted to resolve this issue cooperatively after learning of the existence of Mr. Garrett's phone and could not. In the alternative, the United States requests that this case be dismissed under Rule 37(e)(2)(C). This is another baseline failure by Plaintiff's counsel to follow the Rules.

**2. Plaintiff Purged her Social Media Accounts During Litigation.**

Plaintiff created the "Exoneree's Daughter" accounts across multiple social media services "because it's part of my story." Exhibit E at 124:1-125:21. The content was also posted to accounts in Plaintiff's own name, not just in the "Exoneree's Daughter" pages. *Id.* Plaintiff testified she deleted the content on these accounts on advice of counsel:

> Q. Okay. So yes, let's talk about that. Which account did you delete?
> A. The Exoneree's Daughter TikTok account in its entirety and the videos and posts off of The Exoneree's Daughter Instagram account, just the posts. But the account still exists.
> Q. Okay. Why did you delete the TikTok?
> A. After having conversations with my attorneys, I realized I shouldn't be talking at all, period, about any of this in a public format and chose to delete it because of that.
> Q. Why?
> A. I can't tell you why they said that. I'm just trusting their advice.
> …
> Q. Why would it be bad for you to talk in public about this case?
> A. I can't tell you why. Relying on their advice.

*Id.* at 126:17-128:7. Further details about the deletion can be found in the rest of this line of questioning. *Id.* at 127:12-136:3. A directive to delete social media accounts is not permissible.[4]

In the March 28 letter, Plaintiff's counsel refused to produce the documents. Exhibit C at 8 ("Plaintiff's counsel will not comb through Plaintiff's publicly available Facebook posts and produce them to you. How would you propose we do so? Do you want us to take screenshots of the posts that you can simply access by going to her Facebook page?"). On April 4, Plaintiff's counsel reported that only one video from the TikTok had been recovered. Exhibit D at 2–3.

As explained above, parties have a duty to preserve evidence relevant to litigation, including social media. Social media accounts that contained content regarding Mr. Garrett's cases and eventual release are self-evidently relevant and should have been preserved. *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 138 F. Supp. 3d 352, 388 (S.D.N.Y. 2015), *aff'd*, 945 F.3d 83 (2d Cir. 2019) (duty to preserve social media arose when case was filed and litigation holds issued). The case management order requires it, D.E. 55 at 6, PageID# 317, and the duty arose likely before this case was even filed. Social media is generally discoverable. *Boegh v. Harless*, No. 518CV00123TBRLLK, 2021 WL 1923365, at *7 (W.D. Ky. May 13, 2021).

The fact that certain portions of a social media account may be public does not prevent its discovery. *See, e.g.*, *Washington-St. Tammany Elec. Coop., Inc. v. Louisiana Generating, L.L.C.*, No. CV-17-405-JWD-RLB, 2019 WL 1804849, at *6 (M.D. La. Apr. 24, 2019); *Morgan v. Safeway Inc.*, No. WMN-11-1667, 2012 WL 2135601, at *2 (D. Md. June 11, 2012) ("Moreover, even publicly available information might properly be the subject of a valid request for production

[4] Tenn. Sup. Ct. R. 8, RPC 3.4(a) ("A lawyer shall not: unlawfully obstruct another party's access to evidence or unlawfully alter, destroy, or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act[.]"); Local Rule 83.01(c)(6) ("The standard of professional conduct of the members of the bar of this Court shall include the current Tennessee Rules of Professional Conduct.").

of documents."). Plaintiff's posts about her experiences and about the facts of this case are clearly relevant to this litigation. She herself named the account "The Exoneree's Daughter." The United States is entitled to those posts and communications associated with the accounts that contained content related to the facts of this case.

This is not a situation where a party in litigation seeks to trawl through an opposing party's social media pages fishing for something that could help its case. The Plaintiff has filed a federal lawsuit alleging that her father was wrongfully incarcerated by the defendants in a conspiracy to break the law decades ago. And she maintained a large presence on social media specifically dedicated to promoting those facts to a wider audience, calling those accounts across platforms "The Exoneree's Daughter." In addition, she posted about her experiences on her own accounts (without the moniker), which she testified have almost 10,000 followers spread across three platforms. Exhibit E at 126:6-16. What she said and did in those posts (on both her personal pages and on the Exoneree's Daughter pages) certainly meets the broad relevance test the Rules allow. And much of that content is simply gone, Exhibit E at 128:13-129:13, and Plaintiff's counsel not only permitted the deletions to occur but took no steps to recover the content.

In a similar case filed under Section 1983, a former prisoner named Debra Milke was allegedly wrongfully incarcerated and created a website and social media accounts to support her claims of innocence. *Milke*, 497 F. Supp. 3d at 457–58. Counsel directed Milke to purge the website. *Id.* at 459 ("In sum, Milke or her agents directed the removal and destruction of the website and portions of the social media sites after March 2013."). The Court noted that the destruction of the website and social media sites supported dismissal of the action and dismissed the case. *Id.* at 478–79. Affirming the District Court's dismissal of the case, the Ninth Circuit credited the lower court's conclusions and specifically pointed to the deletion directive as problematic: "Milke and her lawyers also directed the removal or destruction of a website and

social media pages about her case. The district court did not clearly err in making these core findings." *Milke v. City of Phoenix*, No. 20-17210, 2022 WL 259937, at *1 (9th Cir. Jan. 27, 2022).

The same three-part test under Rule 37 is clearly satisfied. Plaintiff's social media should have been preserved and was instead deleted; Plaintiff and her lawyers failed to take steps to preserve that information (in fact, they affirmatively took steps to keep that information from Defendants); and the information cannot be recovered. *Adamczyk*, 667 F. Supp. 3d at 556 (E.D. Mich. 2023). This situation satisfies all three elements for sanctions.

The United States requests an adverse inference at trial under Rule 37(e)(2) that the trier of fact must presume the information was unfavorable to Plaintiff's case. *See, e.g.*, *Torgersen v. Siemens Bldg. Tech., Inc.*, No. 19-CV-4975, 2021 WL 2072151, at *5 (N.D. Ill. May 24, 2021) (jury instruction for deleted Facebook page); *Holloway v. Cnty. of Orange*, No. SACV1901514DOCDFMX, 2021 WL 454239, at *2 (C.D. Cal. Jan. 20, 2021) (same); *Painter v. Atwood*, No. 2:12-CV-01215-JCM, 2014 WL 1089694, at *9 (D. Nev. Mar. 18, 2014) ("Although Plaintiff's counsel may have failed to advise Plaintiff that she needed to save her Facebook posts and of the possible consequences for failing to do so, the deletion of a Facebook comment is an intentional act, not an accident, and the Court cannot infer that Plaintiff deleted Facebook comments which stated that she enjoyed working for Defendant Dr. Atwood, after she contemplated the instant litigation, for an innocent reason."). In the alternative, the United States requests that this case be dismissed under Rule 37(e)(2)(C), as in *Milke*.

**3. Conclusion**

As discussed above, the United States requests an adverse inference at trial based on this problematic course of conduct regarding ESI by Plaintiff and her counsel. But as the *Milke* case shows, under similar facts, dismissal is another remedy the Court can and should apply. The discovery system rests on trust that the rules regarding preservation will be followed by everyone

before the Court. When they are not, it hinders parties from being able to evaluate and present their cases. *Cf. Milke*, 497 F. Supp. 3d at 478 ("Milke's undisputed repeated instances of document destruction mean a jury would never be provided the full record for the purpose of judging credibility."). Dismissal is appropriate under Rule 37(e)(2)(C).

In its position statement below, Plaintiff offers a slew of after-the-fact affidavits and materials, all which amount to conjecture about what these deleted materials contained. That Plaintiff's counsel felt the need to provide these affidavits is telling. There is no dispute that these materials are beyond the reach of the parties now. Plaintiff can only speculate about what the deleted items contained. Post-hoc affidavits by witnesses cannot obscure that Plaintiff's counsel failed to fulfill their duties under the Rules to preserve evidence. As the Court will see from the Plaintiff's exchanges with her father, Mr. Garrett was clearly a prodigious texter. There is no telling what he said to others without telling his daughter.

Further, the United States subpoenaed Mr. Bowen on June 25, 2024, requesting that he produce text messages and other communications with Garrett and with Plaintiff. Mr. Bowen, a close friend to Garrett, appeared on the television series *Reasonable Doubt* with Plaintiff proclaiming Garrett's innocence. Interestingly, Plaintiff now produces an affidavit from Mr. Bowen saying he has no text messages or communications with Garrett. As far as the United States is aware, Mr. Bowen is not represented by Plaintiff's counsel. Mr. Bowen has a duty to comply with the subpoena, which he has not done, and he certainly cannot shield himself from compliance via an affidavit.

**B. Plaintiff's Position**

Defendant's claim that Plaintiff spoliated evidence is without merit. Defendant engages in baseless speculation about the existence of the evidence it claims Plaintiff has spoliated, and it offers no concrete suggestion of how the putative "evidence" would support its defenses.

Defendant further misleads the Court by failing to acknowledge the more than 25,000 pages of documents Plaintiff has produced in this litigation, which include voluminous notes prepared by Garrett related to the criminal investigation underlying Plaintiff's claims. Defendant's motion casts untrue aspersions on Plaintiff—a woman who lost the opportunity to have any kind of normal relationship with her father because Defendants framed him for a murder he did not commit—in an effort to conjure a defense out of thin air. At the same time, Defendant falsely accuses Plaintiff's counsel of engaging in extraordinarily unprofessional misconduct in a transparent attempt to prejudice this Court against Plaintiff and her attorneys.

Notably absent from Defendant's motion is any analysis of the claims and potential defenses in this lawsuit, without which it is impossible to assess Defendant's assertion of spoliation. The operative complaint alleges various causes of action against the individually named defendants stemming from Garrett's wrongful prosecution and conviction for a fire that occurred in 1992. Generally, the factual and legal issues that will be resolved at trial relate to (1) whether the defendants conspired to fabricate evidence that Garrett intentionally started the fire; (2) whether probable cause existed to prosecute Garrett absent the allegedly fabricated evidence; (3) whether the defendants withheld evidence favorable to Garrett; (4) whether the fabricated/withheld evidence influenced the decision to prosecute Garrett; (5) whether the fabricated evidence caused Garrett's convictions and incarceration; (6) whether the defendants acted with deliberate indifference to Garrett's constitutional rights; and, in the event of a finding of liability, (7) Garrett's damages. Presumably, the defendants will contend that they did not fabricate or withhold evidence, and that they did not influence Garrett's prosecution or cause his convictions. When viewed from this perspective, it is easy to see that Defendant's motion—which focuses on text messages of unknown substance that likely never existed and TikTok videos created by Plaintiff after Garrett's death—is not only meritless, but a waste of this Court's valuable time and resources.

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Black v. Costco Wholesale Corp*., 542 F. Supp.3d 750, 752 (M.D. Tenn. 2021). A party seeking spoliation sanctions has the burden of establishing the elements of a spoliation claim. *E.g.*, *Khaldej v. Kaspiev*, 961 F. Supp. 564, 571 (S.D.N.Y 2013). Spoliation occurs when a party intentionally destroys evidence "that is presumed to be unfavorable to the party responsible for the destruction." *Id*. (quoting *Clark Constr. Grp., Inc. v. City of Memphis*, 229 F.R.D. 131, 136 (W.D. Tenn 2005)). A party seeking a spoliation sanction because evidence was destroyed must establish that (1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *Billiter v. SP Plus Corp.*, 329 F. Supp. 3d 459, 466 (M.D. Tenn. Aug. 31, 2018).

**1. Plaintiff did not spoliate evidence by failing to preserve Garrett's cellphone.**

Defendant asserts that Plaintiff had a duty to preserve Garrett's cellphone—a device that did not come into existence until more than 30 years after the fire—because it might have contained "facts" relevant to the lawsuit, including Garrett's "notes on the case, messages with friends about his experiences, damages, and the claims in this case[.]" Defendant argues that it has been prejudiced because "there is no telling what was on Mr. Garrett's phone," including "non-privileged communications relevant to Mr. Garrett's knowledge of the facts of the complaint, or even communications with witnesses." Defendant contends that Plaintiff spoliated evidence by not preserving the phone and asks this Court to issue an adverse inference instruction at trial compelling the trier of fact to presume that information on Garrett's phone was unfavorable to his case. In the alternative, Defendant asks this Court to dismiss Plaintiff's lawsuit.

It is axiomatic that a party need not produce irrelevant information during discovery. *Rose v. Target Stores*, No. 22-cv-2205, 2022 WL 906051, at *3 (M.D. Tenn. Mar. 28, 2022). A request for spoliation sanctions must be denied in the absence of a showing that the spoliated evidence would have been useful to the moving party's case. *Id*. at n.3 (citing *Adkins v. Wolever*, 554 F.3d 650, 652–53 (6th Cir. 2009). Moreover, mere speculation as to whether evidence has been destroyed is insufficient to sustain a motion for spoliation instructions. *E.g.*, *Khaldej*, 961 F. Supp. at 569; *Champion Foodservice, LLC v. Vista Food Exch., Inc.*, No. 13-cv-1195, 2016 WL 6642228, at *20 (N.D. Ohio Aug. 23, 2016) (denying request for spoliation instruction where the moving party did not show how the "unknown, allegedly spoliated, evidence would have been otherwise useful to [its] case.").

Plaintiff did not spoliate "evidence" by returning Garrett's cellphone to AT&T because she has no reason to believe that it contained evidence relevant to this litigation. *See* affidavit of Plaintiff, attached as Exhibit F, at ¶¶ 33, 35. Plaintiff avers that Garrett did not take "notes" on his cellphone, and he therefore did not have any notes about his case or this lawsuit on his phone. *See* Exhibit F, ¶¶ 5–6. Moreover, in the approximately five months that Garrett possessed a phone before his untimely death, he repeatedly expressed that he had difficulty sending emails. *See* Exhibit F, ¶ 7. For example, on July 14, 2022, Garrett sent Plaintiff a text stating, "Evidently I have forgotten how to send you an email, so I'll use texting." *See* excerpt of text messages between Garrett and Plaintiff, attached as Exhibit G, at p. 1. On July 27, 2022, Garrett sent Plaintiff a text stating that he tried to email Jessica Van Dyke (his attorney at the Tennessee Innocence Project), but that the email "wouldn't go out." *See* Exhibit G, at p. 2. Up until his death, Garrett typically responded to the few emails that Plaintiff sent to him via text. *See* Exhibit F, ¶ 7. Based on Garrett's lack of familiarity and comfort with emailing, Plaintiff has no reason to believe that he sent non-privileged communications with anyone about something as sensitive as the facts of his case or

this lawsuit via email.[5] *See* Exhibit F, ¶ 9.

Most importantly, Plaintiff has no reason to believe that Garrett's cellphone had information on it relevant to this lawsuit because Garrett was "paranoid" about sharing information about his case in general, and through emails and text messages in particular. *See* Exhibit F, ¶ 14. Plaintiff was Garrett's only child, and after his release, his closest confidant. *See* Exhibit F, ¶ 12. Plaintiff helped Garrett reintegrate into society after his release by helping him with housing and supporting him financially. They communicated on an almost daily basis. *See* Exhibit F, ¶ 11. The closeness of their relationship is confirmed by texts Garrett sent to Plaintiff, stating, for example, "You are THE one person I actually do trust Deana[,]" and, "If I need to share anything, you are the only one I would share it with." *See* Exhibit F, ¶ 13; *see* Exhibit G, at p. 22.

Yet, even with Plaintiff, Garrett refrained from discussing any details related to the underlying criminal case or his potential lawsuit through email or text message. *See* Exhibit F, ¶¶ 19, 24. On the contrary, Garrett and Plaintiff had a dispute, which is referenced in their text messages, about Plaintiff appearing in a testimonial video as part of a fundraising event for the Tennessee Innocence Project. *See* Exhibit F, ¶¶ 15–16; *see* Exhibit G, pp. 3–22. In the days leading up to his death, Garrett again expressed anger with Plaintiff when he learned that the video was posted by the Innocence Project to YouTube, and that Plaintiff had posted about the Innocence Project on Facebook.[6] *See* Exhibit F, ¶ 17; *see* Exhibit G, at pp. 25–37. Garrett's response was consistent with his general paranoia about sharing information related to his criminal case or a potential lawsuit. *See* Exhibit F, ¶ 18.

Plaintiff's counsel has disclosed all the emails and text messages exchanged between

[5] Plaintiff does not dispute that prior to his death, Garrett sent her a text message indicating that he sent Plaintiff's counsel's firm an email about his potential lawsuit at the firm's request. *See* Exhibit G, at p. 24.

[6] The testimonial video and videos from the Innocence Project fundraising event have been produced to the defendants in this litigation.

Plaintiff and Garrett from Plaintiff's phone to the defendants in this litigation. *See* Exhibit F, ¶ 31. In the 538 pages of text messages, the only text Garrett sent Plaintiff about the underlying criminal case is the following:

> The state WITHHELD tons of facts and evidence throughout this entire ordeal, so I'm pretty sensitive when it comes to that sort of thing.

*See* Exhibit F, ¶ 20; *see* Exhibit G at p. 23. Garrett did not send any additional text messages explaining what he meant. *See* Exhibit F, ¶ 20. The only text messages Garrett and Plaintiff exchanged about a potential lawsuit were messages related to Garrett contacting attorneys, a draft contract between Garrett and Plaintiff's counsel's firm, and a copy of the Notice of Claim sent to the ATF before this lawsuit was filed. *See* Exhibit F, ¶¶ 21–23. Apart from the foregoing messages, Garrett never sent Plaintiff any text messages or emails related to the criminal investigation, his criminal proceedings, his efforts to overturn his convictions, or his theories about this lawsuit. *See* Exhibit F, ¶ 24.

Given that Garrett did not send any substantive emails or text messages about his criminal case or a potential lawsuit to Plaintiff—the person with whom Garrett was closest—Plaintiff has no reason to believe that Garrett sent any such emails or text messages to anyone else. Defendant has therefore failed to meet the second element of its spoliation claim, *i.e.*, that Plaintiff failed to preserve the phone with a culpable state of mind.

Defendant appears to base its assertion that Garrett must have texted or emailed people about his criminal case and a potential lawsuit on the fact that Plaintiff and Garrett's friend appeared on an episode of a television show titled *Reasonable Doubt*. Based on the appearance of the friend on the show, the defense concludes that Garrett's "circle has been intimately involved in the progression of his case." But Defendant's conclusion is as vague as it is useless to its argument. Just because Garrett had friends and supporters does not mean that he sent them text

messages or emails about a criminal investigation that occurred thirty years prior or any other matter arguably relevant to this lawsuit.

On the contrary, Norman Bowen—the very friend who appeared on the episode of *Reasonable Doubt* referenced by Defendant—states under oath that Garrett never sent him any text messages or emails about the criminal case or a potential lawsuit. *See* Affidavit of Norman Bowen, attached as Exhibit H, ¶ 7.[7] Bowen's impression was that Garrett did not like texting, and that he preferred to communicate in person. *See* Exhibit H, ¶ 8. Like Plaintiff, Bowen attests to the fact that Garrett was a private person, and that it would have been inconsistent with Garrett's personality to send written information about his criminal case or a lawsuit through text messages or emails. *See* Exhibit H, ¶ 9.

Garrett's remaining closest friend and mentor was Denny Griswold. *See* Affidavit of Denny E. Griswold, attached as Exhibit I, ¶ 6. Griswold met Garrett through a prison ministry at Griswold's church in about 2012. *See* Exhibit I, ¶¶ 2–4. Griswold and Garrett wrote to each other while Garrett was incarcerated, spoke on the phone, and visited each other at the prison. *See* Exhibit I, ¶ 5. Griswold was present when Garrett was released from prison, and the two remained close thereafter. *See* Exhibit I, ¶¶ 7–8. Griswold avers that he and Garrett occasionally sent text messages to each other after Garrett was released, but that Garrett never discussed his criminal case or a potential lawsuit through text message or email. *See* Exhibit I, ¶ 10.

Based on the foregoing, Defendant fails to meet its burden of showing that Garrett's cellphone contained evidence relevant to its defense. That this is true is reinforced by the fact that Defendant has failed to issue a single subpoena to any of Garrett's "circle"—or any other witness for that matter—requesting documents (including emails or text messages) sent to them by Garrett.

---

[7] Bowen signed the affidavit and sent a photograph of it to Plaintiff's counsel. The photograph is of poor quality. Plaintiff's counsel will attempt to obtain an original of the signed affidavit from Bowen through the mail and will produce it to defense counsel upon receipt.

Defendant also has not made any effort to depose any witnesses to ascertain whether Garrett sent them written communications about his case after he was released. Defendant's failure to provide any factual basis to conclude that Garrett's phone contained "evidence," let alone evidence relevant to its defense, means it has failed to meet its burden as to the third element of its spoliation claim.

Defendant's assertion of prejudice is also a complete nonstarter. While Defendant's broad, open-ended discovery requests did not put Plaintiff on notice that she should preserve a phone with no relevance to this lawsuit, Plaintiff, working with her attorneys, has gathered and disclosed more than 25,000 pages of documents related to Garrett's criminal case. These documents include Garrett's defense attorney's files, Plaintiff's communications with Garrett's criminal defense attorneys, Plaintiff's communications with Garrett, and hundreds of pages of handwritten and typed notes believed to be prepared by Garrett related to his case, which Garrett shared with his defense attorneys and experts prior to his release. *See* Exhibit F, ¶¶ 28–32. To give the Court a sense for what these documents entail, they include: Garrett's notes related to the events on the date of the fire up through the date of his conviction (*see* Exhibit J); Garrett's notes on the history of alleged violence between him and Lance (*see* Exhibit K); Garrett's notes on how he believed his trial and appellate attorneys were ineffective (*see* Exhibit L); Garrett's notes on questions he believed should be asked of Defendant Cooper (*see* Exhibit M); and Garrett's notes on the layout and construction of the residence where the fire occurred (*see* Exhibit N). Garrett's notes are replete with information about the contentions in this lawsuit, including detailed thoughts, impressions, and opinions on the evidence Plaintiff alleges that the defendants fabricated. Given that Plaintiff has disclosed voluminous documents consisting of the information Defendant claims "might" have been on Garrett's phone, the notion that Defendant has been prejudiced by Plaintiff's failure to preserve the phone must be rejected.

Defendant's reliance on *Matter of In Re Skanska*—suggesting that this situation is in any way analogous to that case because both involve claims of spoliation pertaining to cellphone evidence—underscores the futility of its argument. *Skanska* involved Skanska's failure to secure barges in response to a forecasted hurricane, which resulted in damage to the Pensacola Bridge and property along the Pensacola Bay. *Skanska USA Civil Southeast Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1299–1300 (11th Cir. 2023). *Skanska* failed to preserve text messages on employee-issued cellphones that were not only relevant, but "needed for the litigation" because they included contemporaneous communications directly involved in the subject matter of the suit. *Id*. at 1313.

The complete opposite is true here; Plaintiff not only disputes the existence of the putative evidence, but even if the hypothetical text messages exist, they were not generated until more than 30 years after the fire. There is simply no reason to believe that the imagined text messages or emails would be probative of the issues in this lawsuit, and Defendant's motion should be denied.[8]

**2. Plaintiff did not spoliate evidence by deleting her TikTok videos.**

As a threshold matter, Defendant's assertion that Plaintiff's attorneys directed her to delete TikTok videos she created under the account name "Exoneree's Daughter" is beyond the pale. That is not what Plaintiff testified to in her deposition, and it is 100% false. As Plaintiff testified, she received advice from her attorneys that she should not talk about the lawsuit in a public format.[9] Plaintiff then decided of her own accord to delete the videos. *See* Exhibit E at 126:17–128:7. Defendant's willingness to accuse Plaintiff's counsel of directing its client to delete "evidence" without knowing the facts speaks volumes about its approach to this litigation.

---

[8] Defendant makes an issue out of Plaintiff's counsel's failure to request a court order directing AT&T to produce the data from Garrett's phone, which he indicated he would do in an April 4 letter. Plaintiff's counsel's understanding is that a court order would be futile because AT&T does not store text messages. Nevertheless, Plaintiff's counsel will file a motion for a court order directing AT&T to produce the data from Garrett's phone.

[9] Of course, this is advice that attorneys routinely give to their clients, and defense counsel's insinuation during Plaintiff's deposition that such advice is atypical is completely disingenuous.

Plaintiff makes a very narrow waiver of attorney-client privilege to address Defendant's allegations. *See* Exhibit F, ¶¶ 38–40. As Plaintiff states in her affidavit, well before discovery requests were issued, Plaintiff had a conversation with her attorneys about making public comments about the lawsuit. *See* Exhibit F, ¶ 41. Plaintiff's counsel recommended that Plaintiff avoid making public statements about the case on social media. *See* Exhibit F, ¶ 42. Plaintiff and her attorneys did not discuss any specific social media posts, and Plaintiff did not tell her attorneys about the Exoneree's Daughter TikTok account. *See* Exhibit F, ¶ 43. Plaintiff then deleted the videos because (a) she thought that doing so was consistent with her attorney's advice, and (b) she did not realize that she should preserve them. *See* Exhibit F, ¶ 44–45. Plaintiff confirms that her attorneys never advised her to delete any social media content. *See* Exhibit F, ¶ 39. The first time Plaintiff and her attorneys discussed the at-issue account was after Defendant USA issued its written discovery requests. *See* Exhibit F, ¶¶ 46–47.

Setting aside the circumstances under which the videos were deleted, Defendant does not explain how the videos would be relevant to any of its defenses. As Plaintiff explains in her affidavit, she created the short videos to describe her perspective on her father's wrongful incarceration. *See* Exhibit F, ¶ 47. Plaintiff does not have personal knowledge of the criminal investigation underlying this lawsuit or the allegations against the individually named defendants. Defendant does not explain how Plaintiff's impressions on her father's wrongful conviction would be admissible at trial. Nor does it explain how Plaintiff's thoughts, emotions, or opinions would support its defense.

Defendant claims that this case is similar to *Milke*. On the contrary, Defendant's reliance on *Milke* demonstrates the frivolity of its request for sanctions. In *Milke*, the former-criminal-defendant-turned-plaintiff confessed to murdering a child. *Milke*, 497 F. Supp. 3d at 448. The Ninth Circuit granted the plaintiff's petition for writ of habeas corpus based on the prosecution's

failure to disclose evidence undermining the interrogating officer's credibility. *Id*. at 448–49. For several years prior to the grant of relief, the plaintiff controlled a "comprehensive" website and later posted on social media about her criminal case. *Id*. at 457–58. After the prosecution indicated its intent to retry the plaintiff, the plaintiff's criminal defense attorney sent a written directive to remove specific information from the website because he was concerned could be used to damage the plaintiff in her criminal case. *Id*. at 458. The plaintiff's civil attorneys subsequently asked her to "remove literally everything" pertaining to her case from the website. *Id*. In addition to the destruction of the website, the plaintiff, *inter alia*, improperly shredded boxes of documents related to the criminal case she maintained while she was in prison, and she improperly asserted attorney-client privilege over documents that she shared with a journalist. *Id*. at 452. Among those documents were pages of the plaintiff's journal that "addressed the core issue of what happened" during the interrogation that was at the center of the lawsuit. *Id*. at 470. Based on the foregoing and numerous other factors unique to that case, the district court concluded it was more likely than not that the destroyed evidence incriminated the plaintiff. *Id*. at 470–71.

The distinctions between *Milke* and this situation are obvious. First, Plaintiff's TikTok videos were not created by Garrett, whose wrongful conviction is at issue in the lawsuit. Second, the videos were not deleted to intentionally destroy evidence harmful to Garrett. Third, the videos have nothing to do with "the core issues" in this lawsuit, including the fire, the criminal investigation, or whether the defendants fabricated evidence. Fourth, Plaintiff has disclosed hundreds of pages of notes authored by Garrett, many of which <u>do</u> address the central issues in this lawsuit. Finally—and contrary to Defendant's assertion that Plaintiff deleted "much of the content" pertaining to her "experiences"—Plaintiff did not delete any of her social media posts

other than the videos.[10] *See* Exhibit F, ¶ 52. The vast majority of what Plaintiff has posted to social media has been preserved and is available to Defendant. This includes all of Plaintiff's Facebook posts and her blog posts related to her father. Moreover, Plaintiff described in much greater detail her thoughts and emotions about her father's conviction in her communications with Garrett than in the videos, all of which have been produced to Defendant. *See* Exhibit F, ¶ 51.

Defendant's reliance on *Atwood* likewise demonstrates that its position is meritless. The plaintiff in *Atwood* alleged that her employer sexually assaulted her. *Atwood*, 2014 WL 1089694, at *1. During the litigation, the plaintiff deleted Facebook posts that contradicted her deposition testimony in which she indisputably made comments about how much she enjoyed her job and working with her defendant-boss. *Id.* at *2, 4. In awarding sanctions, the district court noted that the deleted comments were "directly relevant" to her claim that the defendant was a sexual predator. *Id.* at *6. For obvious reasons, Defendant has not explained how Plaintiff's TikTok videos could be reasonably compared to the deleted posts in *Atwood*. Nor has Defendant plausibly demonstrated that Plaintiff contradicted (or even addressed) any of the allegations made in this lawsuit in the videos. Defendant's motion for sanctions should therefore be denied.

**3. Plaintiff should not be compelled to produce posts related to Garrett that are available to the public on her Facebook page**

Defendant conflates its spoliation argument with an argument about Plaintiff's Facebook page, *i.e.*, that Defendant "is entitled to those posts and communications associated with the

---

[10] In reviewing her publicly available Facebook page to respond to Defendant's assertion of spoliation, Plaintiff learned that three more of the videos she posted to the Exoneree's Daughter account remain on her Facebook page. Plaintiff's counsel has produced links to the videos to defense counsel. A review of those videos demonstrates their *de minimis* probative value to this lawsuit. They can be found on Plaintiff's Facebook page as follows:

https://www.facebook.com/Move2ColoSprings/videos/689531543200943

https://www.facebook.com/Move2ColoSprings/videos/6859139794110298

https://www.facebook.com/Move2ColoSprings/videos/3122804974691447

accounts that contained content related to the facts of this case." Plaintiff does not dispute that references to Garrett's case on Plaintiff's Facebook page are relevant under the federal rules. Plaintiff's position is that because (1) the posts have, at best, slight probative value, (2) the posts are all available to Defendants by accessing Plaintiff's Facebook page, and (3) the burden of searching all of the posts is high, Plaintiff should not be compelled to produce them.

In general, the scope of discovery extends to non-privileged information that is relevant to a party's claim or defense so long as it is proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). A court need not compel discovery if "the burden of the proposed discovery outweighs its likely benefit." *Id*. The following factors determine whether the requested discovery is proportional: (1) the importance of the issues at stake in the action, (2) the amount in controversy, (3) the parties' relative access to relevant information, (4) the parties' resources, (5) the importance of the discovery in resolving the issues, and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. *Burges v. BancorpSouth, Inc.*, No. 14-cv-1564, 2017 WL 4640462, at *3 (M.D. Tenn. Oct. 12, 2017).

The most significant factors related to the posts on Plaintiff's Facebook page are the parties' relative access to relevant information, the importance of the discovery in resolving the issues, and the burden of the proposed discovery. As noted in Plaintiff's affidavit, much of her business is based on networking and interacting with potential clients on Facebook. *See* Exhibit F, ¶ 54. The vast majority of her posts have nothing to do with Garrett or this lawsuit. *See* Exhibit F, ¶ 55. Plaintiff anticipates that a download of her Facebook page would be tens of thousands of pages long. *See* Exhibit F, ¶ 56. A review of her Facebook posts for posts related to her father would take days. *See* Exhibit F, ¶ 56. Thus, the burden of producing Plaintiff's Facebook page is high, and weighs against compelling Plaintiff to produce it.

The importance of Plaintiff's Facebook posts to determining whether Garrett's

constitutional rights were violated is next to nil. Plaintiff has attached a typical post related to Garrett to her affidavit to give the Court a sense for the type of information the posts contain. *See* Exhibit F, ¶¶ 58–60. The post centers on Plaintiff's retreat sponsored by Healing Justice which, per its website, "is a national nonprofit organization that engages in healing and justice reform to address individual and community harms caused by injustice." *See* https://healingjusticeproject.org/. The following is an excerpt of what Plaintiff wrote in the post:

> I've been searching for the right words for days and I simply don't have them….
>
> 31 years ago my father was convicted of a crime he did not commit and that set in motion SO MANY things for my life that I had no control over. Things I didn't choose. Situations that weren't ours to claim.
>
> Last year he was finally exonerated and so many things came to the surface for me. I am not even sure I've started truly navigating things with all this but I'm not ignoring it. Baby steps.

Simply put, although relevant in the broadest sense of the word, Plaintiff's posts have very little value to the contested issues in this lawsuit. At the same time, Defendants can search through Plaintiff's Facebook page to the extent that they deem it a worthwhile use of their time and resources. Both of these factors weigh heavily against compelling Plaintiff to produce posts from her Facebook page.

For these reasons, to the extent Defendant's position is that Plaintiff should be compelled to produce all of the posts related to Garrett from her Facebook page, the request should be denied.

Respectfully submitted,

HENRY C. LEVENTIS
United States Attorney
Middle District of Tennessee

s/ Michael Tackeff
ANICA C. JONES, B.P.R. # 025325
MICHAEL C. TACKEFF, B.P.R. #036953
KIMBERLY S. VEIRS, B.P.R. #034811
Assistant United States Attorneys
719 Church Street, Suite 3300
Nashville, TN 37203
Telephone: (615) 736-5151
Email: anica.jones@usdoj.gov
michael.tackeff@usdoj.gov
kimberly.veirs@usdoj.gov
*Attorneys for the United States*

KATHLEEN T. ZELLNER & ASSOCIATES, P.C.

s/ Nicholas Curran
KATHLEEN T. ZELLNER
NICHOLAS CURRAN
JOANNA P. KLUZOWSKA
4580 Weaver Parkway, Suite 204
Warrenville, IL 60555
Email: attorney@zellnerlawoffices.com
Email: nick@zellnerlawoffices.com
Email: attorneys@zellnerlawoffices.com

METROPOLITAN LEGAL DEPARTMENT

s/ Melissa S. Roberge
JOHN W. AYERS
MELISSA S. ROBERGE
MICHAEL DOHN
P.O. Box 196300
Nashville, TN 37219
Email: allison.bussell@nashville.gov
Email: will.ayers@nashville.gov
Email: melissa.roberge@nashville.gov

TUNE, ENTREKIN & WHITE, P.C.

s/ Peter J. Strianse
PETER J. STRIANSE
Capitol View
500 11th Avenue North, Suite 600
Nashville, TN 37203
Email: pstrianse@tewlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2024, a copy of the foregoing was filed electronically. A copy will be sent to the following, if registered, by operation of the Court's electronic filing system. If not registered, a copy was sent by United States first class mail, postage prepaid, to the following:

| | |
|---|---|
| Kathleen T. Zellner<br>Nicholas Curran<br>Joanna P. Kluzowska<br>Kathleen T. Zellner & Associates, P.C.<br>4580 Weaver Parkway, Suite 204<br>Warrenville, IL 60555<br>Email: attorneys@zellnerlawoffices.com<br>Email: nick@zellnerlawoffices.com | Wesley B. Clark<br>Brazil Clark, PLLC<br>2901 Dobbs Avenue<br>Nashville, TN 37204<br>Email: wesley@brazilclark.com |
| Melissa S. Roberge<br>John W. Ayers<br>Michael R. Dohn<br>Metropolitan Legal Department<br>P.O. Box 196300<br>Nashville, TN 37219<br>Email: melissa.roberge@nashville.gov<br>Email: will.ayers@nashville.gov<br>Email: michael.dohn@nashville.gov | Peter J. Strianse<br>Tune, Entrekin & White, P.C.<br>Capitol View<br>500 11th Avenue North, Suite 600<br>Nashville, TN 37203<br>Email: pstrianse@tewlawfirm.com |

s/ Michael Tackeff
MICHAEL C. TACKEFF
Assistant United States Attorney