IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

|  |  |
|---|---|
| DEANA WATSON, as Independent Administrator of the Estate of CLAUDE GARRETT, Deceased, | ) ) ) ) ) |
| Plaintiff, | ) NO. 3:23-cv-00456 ) |
| v. | ) JUDGE RICHARDSON ) |
| Current and/or Former Nashville Metropolitan Fire Department Marshals, *et al.*, | ) ) ) ) |
| Defendants. |  |

## MEMORANDUM OPINION

Pending before the Court are the motion to dismiss of Defendant United States of America ("United States") (Doc. No. 80, "United States' Motion") and the motion to dismiss of Defendants Otis Jenkins, Patrick Hunt, Kenneth Porter, William Michael Roland, and Desmond Carter ("Metro Defendants," and collectively with the United States, "Defendants") (Doc. No. 87, "Metro Defendants' Motion"). In the Motions, Defendants assert that the Second Amended Complaint (Doc. No. 67, "SAC") must be dismissed in its entirety pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure due to a purported lack of subject-matter jurisdiction.

Plaintiff has filed responses in opposition to the respective Motions (Doc. No. 86; Doc. No. 91), and Defendants have filed replies in support of the respective Motions (Doc. No. 90; Doc. No. 92). Plaintiff has filed a sur-reply (Doc. No. 96) to the Metro Defendants' Reply.

For the reasons discussed herein, the Court will grant in part and deny in part Defendants' Motions. Specifically, the Court will grant the Motions as to Count V and deny the Motions as to Counts I, II, III, IV, VI, and VII.

## BACKGROUND[1]

Plaintiff is a resident of Tennessee and the daughter of Claude Garrett ("Mr. Garrett"). (Doc. No. 67 ¶¶ 12, 14). At relevant times, Defendants Porter, Jenkins, and Hunt "were employees of the Nashville Metropolitan Fire Department" and "acting within the scope of their employment and under color of state law." (*Id.* ¶¶ 15–16). Also at relevant times, Defendants Roland, Miller, and Carter "were employees of the Nashville Metropolitan Police Department," acting "within the scope of their employment and under color of state law." (*Id.* ¶¶ 17, 19). And also at relevant times, Defendant Cooper was employed by the United States "as an agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF")," acting "under color of state law" and as "an officer of the United States." (*Id.* ¶¶ 20–23). The SAC alleges, on information and belief, that "all individual Defendants reside in Tennessee." (*Id.* ¶ 24).

Plaintiff brings this case as independent administrator of Mr. Garrett's estate.[2] (*Id.* ¶ 13). Mr. Garrett was wrongfully convicted of arson and murder in 1991 and incarcerated for 28 years, 8 months, and 20 days. (*Id.* ¶¶ 1, 5, 141). The SAC alleges that "Defendants fabricated physical

---

[1] The facts in this section are, except as otherwise indicated, taken from the Second Amended Complaint ("SAC") (Doc. No. 67). As discussed below, where there is a factual attack on the subject-matter jurisdiction of the court under Fed. R. Civ. P. 12(b)(1), no presumptive truthfulness applies to the complaint's allegations; instead, the court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter jurisdiction does or does not exist. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). As each of the instant Motions presents a factual attack, the Court does not accept any of these allegations as true, but rather includes them here merely for context (regarding what this case is about) for the Motions. Even though the Court is not accepting these allegations as true, the Court states them without qualification, as if they were true, with one exception (in the third sentence of the second paragraph of this section).

[2] To reflect the language the parties use in their respective filings, the court will employ the term "administrator" rather than "administratrix."

evidence, attributed false conduct to [Mr. Garrett], suppressed exculpatory evidence [which shows the fire was accidental], and concealed evidence of their wrongdoing." (*Id.* ¶¶ 3–4; *see also id.* ¶¶ 58–112 (detailing the alleged fabrication of evidence and withholding of exculpatory evidence)). Based on exculpatory evidence and with the prosecution's consent, the Criminal Court for Davidson County, Tennessee, vacated Mr. Garrett's conviction on May 6, 2022, and dismissed the charges against him on May 10, 2022. (*Id.* ¶¶ 138–140). As a result of his incarceration, Mr. Garrett suffered damages, including but not limited to "emotional distress, mental anguish, humiliation, loss of liberty, loss of freedom of movement, loss of enjoyment of life, loss of consortium, and other non-pecuniary losses." (*Id.* ¶ 144).

Based on these alleged facts, the SAC brings claims under 42 U.S.C. § 1983, the Federal Tort Claims Act, and Tennessee law. Specifically, the SAC brings claims for violation of due process under section 1983 (Count I against Porter, Jenkins, Hunt, Roland, Miller, Carter and Cooper), malicious prosecution under section 1983 (Count II against Porter, Jenkins, Hunt, Roland, Miller, Carter, and Cooper), conspiracy to deprive of constitutional rights under section 1983 (Count III against Porter, Jenkins, Hunt, Roland, Miller, Carter, and Cooper), supervisory liability under section 1983 (Count IV against Carter), malicious prosecution under the Federal Torts Claims Act (Count V against the United States), intentional infliction of emotional distress under the Federal Tort Claims Act (Count VI against the United States), and intentional infliction of emotional distress under Tennessee law (Count VII against Porter, Jenkins, Hunt, Roland, Miller, Carter, and Cooper). (*See generally id.*).

## LEGAL STANDARD

"The existence of subject matter jurisdiction may be raised at any time, by any party, or even *sua sponte* by the court itself." *Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 904 (6th

Cir. 2006) (quoting *In re Lewis*, 398 F.3d 735, 739 (6th Cir. 2005)).  Each of the Motions raises—disputes—the existence of subject-matter jurisdiction in this case.

"There are two types of motions to dismiss for lack of subject-matter jurisdiction: facial and factual attacks." *Accord v. Anderson Cnty., Tenn.*, No. 3:21-CV-00077, 2021 WL 6135691, at *1 (M.D. Tenn. Dec. 28, 2021) (citing *Gentek Bldg. Prods., Inc. v. Sherman-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007)). The applicable legal standard depends on the type of attack:

> A facial attack challenges merely the sufficiency of the pleading. When reviewing a facial attack, a district court takes the allegations in the complaint as true. If those allegations establish cognizable federal subject-matter jurisdiction, jurisdiction exists. A factual attack instead raises a factual controversy concerning whether subject-matter jurisdiction exists. Where there is a factual attack on the subject-matter jurisdiction of the court under Fed. R. Civ. P. 12(b)(1), no presumptive truthfulness applies to the complaint's allegations; instead, the court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter jurisdiction does or does not exist.

*Transamerica Life Ins. Co. & Transamerica Corp. v. Douglas*, No. 3:21-CV-00194, 2023 WL 2656527, at *3 (M.D. Tenn. Mar. 27, 2023) (quoting *Bush v. Reliant Bank*, No. 3:21-CV-00525, 2022 WL 2359635, at *3 (M.D. Tenn. June 30, 2022), *aff'd*, No. 22-5656, 2023 WL 5275025 (6th Cir. Apr. 10, 2023)). "Courts reviewing factual attacks have 'wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts.'" *Id.* (quoting *Doe v. Lee*, No. 3:21-cv-00809, 2022 WL 1164228, at *4 (M.D. Tenn. Apr. 19, 2022) (citing *Gentek*, 491 F.3d at 330) (footnote omitted)). "And '[a]s always, the party invoking federal jurisdiction has the burden to prove that jurisdiction.'" *Transamerica*, 2023 WL 2656527 at *3 (quoting *Doe*, 2022 WL 1164228 at *4 (citations omitted)).

Here, both Motions present factual challenges. (*See* Doc. No. 81 at 3 n. 1 ("this Motion is a factual attack on jurisdiction"); Doc. No. 88 at 4 (stating that the Motion raises a factual attack)).

DISCUSSION

I. **Overview of Analysis**

Because Defendants' Motions are, in part, based on overlapping arguments, the Court will address the motions together and issue by issue in the interest of judicial efficiency. *See, e.g., E.E.O.C. v. New Breed Logistics*, 962 F. Supp. 2d 1001, 1008 (W.D. Tenn. 2013), *aff'd*, 783 F.3d 1057 (6th Cir. 2015) (in the interest of judicial efficiency, addressing overlapping motions together and issue by issue); *Daniel v. Harper*, 2017 WL 6522090, at *2 (W.D. Ky. Dec. 19, 2017) (same); *United States v. Rodgers*, No. 2:08-CR-56, 2009 WL 3498801, at *1 (W.D. Mich. Oct. 26, 2009) (same). For the reasons stated herein, the Court (i) rejects Defendants' standing arguments, except as to Count V, and (ii) declines to address the issue of capacity because Defendants bring their Motions solely under Rule 12(b)(1). Accordingly, the Court finds that it has subject-matter jurisdiction over the SAC's federal claims, except over Count V, and will exercise supplemental jurisdiction over the state-law claim. Therefore, the Court will grant Defendants Motions on Count V and deny the Motions in all other aspects.

II. **Standing, Real Party in Interest, and Capacity**

"Frequently, attorneys and courts confuse the concepts of standing with that of capacity to sue and with the real party in interest principle." *Firestone v. Galbreath*, 976 F.2d 279, 283 (6th Cir. 1992) (citing Wright & Miller, 6A Fed. Prac. & Proc. Civ. § 1542 (3d ed.)).[3] Therefore, as a

---

[3] Illustrative of this confusion are Plaintiff's references to prudential standing throughout her filings. The Court believes that this terminology is imprecise, inasmuch as prudential standing "embodies judicially self-imposed limits on the exercise of federal jurisdiction." *United States v. Windsor*, 570 U.S. 744, 757 (2013) (quotation marks omitted). Prudential standing is distinct from Article III standing (also called constitutional standing)—even though the same circumstances that show the existence or absence of one kind of standing can also show the existence or the absence of the other kind of standing—and a plaintiff must have both to proceed with his or her case. *See McGlone v. Bell*, 681 F.3d 718, 728 (6th Cir. 2012). To establish prudential standing requirements:

threshold matter, the Court will clarify the distinction between standing, real party in interest, and capacity. "Standing seeks to ensure the plaintiff has a 'personal stake in the outcome of the controversy.'" *Sumpter v. Wayne Cnty.*, 868 F.3d 473, 490 (6th Cir. 2017) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). For purposes of "invoking federal jurisdiction," the "'irreducible constitutional minimum of [Article III] standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 330 (2016), *as revised* (May 24, 2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

On the other hand, the "real party in interest principle embodied in Rule 17 ensures that only a person who possesses the right to enforce a claim and who has a significant interest in the litigation can bring the claim." *Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.a.r.l*, 790 F.3d 411, 420 (2d Cir. 2015) (quotation marks omitted). "Therefore, the term directs attention

---

(1) a plaintiff must assert his own legal rights and interests, without resting the claim on the rights or interests of third parties; (2) the claim must not be a 'generalized grievance' shared by a large class of citizens; and (3) in statutory cases, the plaintiff's claim must fall within the 'zone of interests' regulated by the statute in question.

(*Id.* (citing *Wuliger v. Manufacturers Life Ins. Co.*, 567 F.3d 787, 793 (6th Cir. 2009); *and Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999)). Plaintiff's terminology appears to stem from a Fifth Circuit opinion in which the Fifth Circuit framed the issue of real party in interest as one of prudential standing. *See Abraugh v. Altimus*, 26 F.4th 298, 304 (5th Cir. 2022) ("As the Federal Rules of Civil Procedure make clear, 'an action must be prosecuted in the name of the real party in interest.' Fed. R. Civ. P. 17(a)(1). And a violation of this rule is a failure of 'prudential' standing."). The Fifth Circuit further noted that this issue is not jurisdictional and thus does not implicate subject-matter jurisdiction. *See id.* This Court finds the Fifth Circuit's terminology to be potentially confusing. To avoid confusion, the Court will construe Plaintiff's "prudential standing" arguments as invoking the real-party-in-interest principle of Rule 17(a).
  To be clear, the Court does not equate having prudential standing with being the real party in interest, although it can perceive some degree of overlap in limited circumstances. *See* Wright & Miller § 1559. Rather, the Court believes that Plaintiff meant to invoke the latter concept when referring to 'prudential standing' in her filings.

to whether plaintiff has a significant interest in the particular action plaintiff has instituted, and Rule 17(a) is limited to plaintiffs." Wright & Miller, § 1542. "The purpose of the rule is to prevent multiple or conflicting lawsuits by persons such as assignees, executors, or third-party beneficiaries, who would not be bound by res judicata principles." *Id.* at 421. In other words, "the real party in interest principle is a means to identify the person who possesses the right sought to be enforced [and] capacity is conceived to be a party's personal right to litigate in a federal court." *Firestone*, 976 F.2d at 283 (quoting Wright & Miller, § 1545). "Not every party with standing is a real party in interest, although real parties in interest usually have standing." *Fletcher v. City of New London*, No. 3:16-CV-241 (MPS), 2017 WL 690533, at *3 (D. Conn. Feb. 21, 2017) (citing Wright & Miller, § 1542).

"Finally, capacity to sue or be sued under Rule 17(c) involves a party's personal right to litigate in federal court." (*Id.*). It is possible to be the real party interest and lack the capacity to sue because of, for instance, minority status (in terms of age) or mental incompetency. (*See id.*). For parties other than individuals not acting in a representative capacity and corporations, capacity is determined "by the law of the state where the court is located." Fed. R. Civ. Proc. 17; *accord Firestone v. Galbreath*, 976 F.2d 279, 283 (6th Cir. 1992). This includes estates of deceased persons. *See Fletcher*, 2017 WL 690533 at *3; *Plate v. Johnson*, No. 3:15CV1699, 2018 WL 3569893, at *8 (N.D. Ohio July 25, 2018). Capacity is a defense that must be raised at the outset of a lawsuit. *See Longwood, LLC v. Voegele*, No. 3:17-CV-00676-TBR, 2018 WL 1660086, at *4 (W.D. Ky. Apr. 5, 2018); *Pension Benefit Guar. Corp. v. Staples Cont. & Com., Inc.*, No. 1:13-CV-898, 2014 WL 1045995, at *5 (S.D. Ohio Mar. 14, 2014).

The distinction between these concepts is crucial to the Court's analysis because standing is a threshold jurisdictional requirement, determined at the time a complaint is filed. *See Kepley v.*

*Lanz*, 715 F.3d 969, 972 (6th Cir. 2013) ("Standing 'goes to [a c]ourt's subject matter jurisdiction[.]'") (quoting *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007)); *State by & through Tennessee Gen. Assembly v. United States Dep't of State*, 931 F.3d 499, 507 (6th Cir. 2019) ("If no plaintiff has standing, then the court lacks subject-matter jurisdiction."); *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 580 (6th Cir. 2012) ("Standing is determined at the time the complaint is filed."). In other words, the "distinction between standing and capacity matters" because a lack of standing would require the Court to dismiss the action for lack of jurisdiction. *See Grady v. Madison Cnty., Tenn.*, No. 119CV01153STATMP, 2020 WL 3036891, at *3–4. (W.D. Tenn. June 5, 2020). Conversely, "[i]f the question is one of . . . capacity to sue, then [it] would have no impact on the Court's subject-matter jurisdiction under Article III. Unlike standing, capacity is 'an affirmative defense, not a jurisdictional issue.'" *Id.* at *3 (quoting *Davis v. Lifetime Cap., Inc.*, 560 F. App'x 477, 478 (6th Cir. 2014)).

In *Hill v. Martinez*, 87 F. Supp. 2d 1115 (D. Colo. 2000), the District of Colorado examined a similar set of facts. In relevant part, the plaintiffs filed an amended complaint as personal representatives of their son's estate, bringing section 1983 claims. *See id.* at 1117. However, the plaintiffs did not become representatives of the estate until after they filed the amended complaint and after the statute of limitations had run. *See id.* at 1120–21. The defendants moved to dismiss based on lack of standing. *See id.* at 1117. The court identified the distinction between standing and capacity as the cornerstone of its analysis:

> [The] outcome . . . turns on whether the ability to sue as the representative of a decedent's estate is a question of standing or capacity to sue under Rule 17(b). If it is the former, this action must be dismissed. Indeed, standing is a jurisdictional requirement, and jurisdiction is generally determined at the time a complaint is filed. Because events occurring after the filing of a complaint cannot retroactively create jurisdiction, Plaintiffs' appointment as representatives . . . could not retroactively confer standing on them. Allowing otherwise

would work an impermissible retroactive creation of jurisdiction within the statute of limitations . . . . inconsistent with the Constitution and laws of the United States. Dismissal would necessarily follow.

If the ability to sue as the representative of a decedent's estate is a question of capacity to sue under Rule 17(b), on the other hand, [Plaintiff's lack of capacity at the time of the filing of the amended complaint could be cured, under Colorado state law, based on Plaintiff's subsequent appointment as the estate's representative]. Because capacity to sue is not jurisdictional . . . . characterization of the ability to sue as the representative of a decedent's estate as a question of standing or of capacity to sue is determinative.

I hold that whether individuals can sue on behalf of an Estate is best characterized as a question of capacity.

(*Id.* at 1122) (citations and quotation marks omitted).

Other courts that have thoroughly analyzed whether a plaintiff can sue on behalf of an estate—including the Sixth Circuit in a reported and thus controlling opinion—have generally found that it is a question of capacity, not standing (provided that the estate itself has standing). *See, e.g., Firestone*, 976 F.2d at 283 ("The question [of]. . . whether these plaintiffs can sue on behalf of the Estate . . . . would seem to be a question of capacity rather than standing."); *Grady*, 2020 WL 3036891 at *3 ("In light of the fundamental distinctions between standing and capacity, the Court finds that Defendants' argument is better understood as a challenge to [Plaintiff's] . . . capacity to bring suit on behalf of her deceased son or her son's children, and not her standing."); *Plate,* 2018 WL 3569893 at *5 (estate's ability to assert claims, inasmuch as in must act through an executor or representative, is a question of capacity); *Fletcher*, 2017 WL 690533 at *3; *Est. of Reed v. Ponder Enters., Inc.*, No. 1:11CV554-CSC, 2012 WL 1031487, at *4 (M.D. Ala. Mar. 27, 2012); *Masood v. Saleemi*, No. C06-1104JLR, 2007 WL 2069853, at *3 (W.D. Wash. July 13, 2007), *aff'd*, 309 F. App'x 150 (9th Cir. 2009); *Hill*, 87 F. Supp. 2d at 1122; *Edens v. Laubach*, 838 F. Supp. 510, 513 (D. Kan. 1993); *Glickstein v. Sun Bank/Miami N.A.*, 922 F.2d 666, 670 (11th Cir.1991); *see also Est. of Garcia-Vasquez v. Cnty. of San Diego*, No. 06CV1322LABLSP,

2008 WL 4183913, at *6 (S.D. Cal. Sept. 9, 2008) ("A decedent's estate is no more than a collection of assets and liabilities, and requires a real party in interest, such as a duly appointed executor or administrator of the estate, for purposes of pursuing litigation.").

On the other hand, some opinions have addressed the issue as one of standing, without thoroughly discussing the distinction between standing, capacity, and real party in interest. *See, e.g., Miller v. Collins*, No. 23-3191, 2023 WL 7303305, at *3 (6th Cir. Nov. 6, 2023); *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998), *as amended* (Nov. 24, 1998); *Barrett v. United States*, 689 F.2d 324, 333 (2d Cir. 1982); *Reighley v. Int'l Playtex, Inc.*, 604 F. Supp. 1078, 1080 (D. Colo. 1985). As the District of Colorado aptly pointed out, "[t]hese cases are marked by imprecision for their failure to distinguish standing from capacity to sue" and therefore "lack persuasive value." *Hill*, 87 F. Supp. 2d at 1123.

Defendants urge the Court to follow the reasoning of one such opinion, *Miller*—an unreported Sixth Circuit opinion—because of factual analogies with the present lawsuit, and to find accordingly that Plaintiff lacks standing because she was not a representative of Mr. Garrett's estate when she commenced this lawsuit (and until after the statute of limitations has, according to Defendants, run). (*See* Doc. No. 81 at 5–9; Doc. No. 88 at 5–7; Doc. No. 90 at 3–4; Doc. No. 92 at 1–3). For the above reasons, and especially in light of controlling Sixth Circuit authority to the contrary (*see Firestone*, 976 F.2d at 283), the Court declines to follow *Miller*. Rather, the Court finds that the relevant inquiries are first, whether Mr. Garrett's estate (as opposed to Plaintiff himself) had standing and, if so, whether Plaintiff has the capacity to bring the claims as a representative of the estate.

A. <u>Standing</u>

To state the first relevant inquiry in slightly more detail, it is whether "the [e]state [can] trace a direct injury to the alleged acts of the defendants." *Firestone*, 976 F.2d at 283; *see Plate*, 2018 WL 3569893 at *5 (whether a plaintiff purporting to bring an action on behalf of an estate has standing is "irrelevant" as long as the estate itself has standing because "[w]hen an administrator . . . brings a § 1983 action . . . he sues not to obtain a remedy for an injury done to him . . . personally; rather, a personal representative sues on behalf of an estate."); *see also Ralph Gonnocci Revocable Living Tr. v. Three M Tool & Mach., Inc.*, No. 02-74796, 2006 WL 89867, at *2 (E.D. Mich. Jan. 13, 2006) (denying 12(b)(1) motion where a trust had standing but was not the real party in interest).

The Court has identified multiple opinions relevant to this inquiry. In *Plate*, for instance, the Northern District of Ohio found that the estate had standing because, under Ohio law, a decedent's estate may recover for injuries suffered by the defendant before his death by prosecuting a survival claim, and because the estate could trace the decedent's injuries to the alleged acts of the defendants. *See* 2018 WL 3569893 at *5–6; *see also see also Werner v. Potter*, No. 04-C-0557(E), 2006 WL 839156, at *23 (E.D. Wis. Mar. 24, 2006) ("Under traditional Article III analysis, the estate appears to have standing insofar as it stands in the shoes of the decedent who is alleged to have suffered an injury in fact."). The court further rejected the argument that "the estate never existed" because "an estate is simply the name the law gives to a decedent's collection of assets and liabilities," which includes "survivor claim[s] for injuries that the decedent incurred before the decedent's death," and because "these rules seem to presuppose the existence,

upon the death of the decedent, of an estate, without regard to whether someone has purported to 'open' the estate in probate court." *Id.* at 7.[4]

In a case analogous to the instant one, *Koho v. Forest Lab'ys, Inc.*, No. C05-667RSL, 2015 WL 11198941 (W.D. Wash. Mar. 31, 2015), the plaintiff filed a complaint as the personal representative of an estate. *See id.* at *1. However, the plaintiff had not been appointed representative, and the estate had not been opened at the time she filed the complaint. *See id.* The defendant brought a 12(b)(1) motion, arguing that the court lacked jurisdiction because there was no plaintiff at the time the suit was commenced, inasmuch as there was no personal representative and the estate "did not even exist." *Id.* (quotation marks omitted). The court disagreed with the defendants and denied the 12(b)(1) motion, opining that:

> [State] law contemplates that an estate can be "injured" by harms that a defendant inflicts on the decedent while the decedent is alive . . . . If this estate does not even exist for the purposes of sustaining a lawsuit until some point after the decedent's death, then this estate could not be injured by a defendant's actions, and thus it could never have standing and no representative would ever have capacity to sue on its behalf.

(*Id.* at *2); *accord Hill*, 87 F. Supp. 2d at 1122 ("The premise of survivorship statutes is that the estate retains any injury suffered by the decedent prior to his or her death and, thus, the right to relief for that injury."). In other words, under Washington law (at least), an estate can have standing (and a representative of the estate can have capacity) *for purposes of sustaining the estate's suit* even if in *some sense* the estate did not exist at the time the injury was inflicted on the decent (or even at the time the suit was commenced).

The rationale in the above cases is applicable here. Indeed, Tennessee has a survivorship statute (which Tennessee courts call a "survival statute"), codified at Tennessee Code Annotated sections 20-5-101 *et seq*, which applies even to causes of action not filed by the decedent prior to

---

[4] Tennessee courts have also equated an estate to "the assets and liabilities of a decedent." *See, e.g., In re Est. of Barnwell*, No. 01A01-9711-PB-00656, 1998 WL 755011, at *5 (Tenn. Ct. App. Oct. 30, 1998).

his or her death. *See Sanders v. Higgins*, 690 S.W.3d 255, 264 (Tenn. Ct. App. 2023); *Mid-S. Pavers, Inc. v. Arnco Const., Inc.*, 771 S.W.2d 420, 422 (Tenn. Ct. App. 1989) *see generally* Laurence A. Pivnick, Tenn. Cir. Ct. Prac. §§ 1:18, 5:23 (2025). Specifically, Tennessee Code Annotated section 20-5-102[5] provides that a cause of action survives even when the person who has suffered dies before he or she commenced a suit. Pivnick at § 1:18 n.4. "Claims for personal injuries survive" under this statute. *Can Do, Inc. Pension & Profit Sharing Plan & Successor Plans v. Manier, Herod, Hollabaugh & Smith*, 922 S.W.2d 865, 867 (Tenn. 1996); *see Turnage v. Oldham*, No. 2:16-CV-2907-SHM-TMP, 2019 WL 5424425, at *2 (W.D. Tenn. Oct. 22, 2019) (same). The Sixth Circuit has held that "all § 1983 actions are best characterized as personal injury actions." *Crabbs v. Scott*, 880 F.3d 292, 295 (6th Cir. 2018). On this basis, courts have allowed

---

[5] This statute provides:

> No civil action commenced, whether founded on wrongs or contracts, except actions for wrongs affecting the character of the plaintiff, shall abate by the death of either party, but may be revived; nor shall any right of action arising hereafter based on the wrongful act or omission of another, except actions for wrongs affecting the character, be abated by the death of the party wronged; but the right of action shall pass in like manner as the right of action described in § 20-5-106.

Tenn. Code Ann. § 20-5-102.

In relevant part, section 106 provides:

> (a) The right of action that a person who dies from injuries received from another, or whose death is caused by the wrongful act, omission, or killing by another, would have had against the wrongdoer, in case death had not ensued, shall not abate or be extinguished by the person's death but shall pass to the person's surviving spouse and, in case there is no surviving spouse, to the person's children or next of kin; to the person's personal representative, for the benefit of the person's surviving spouse or next of kin; to the person's natural parents or parent or next of kin if at the time of death decedent was in the custody of the natural parents or parent and had not been legally surrendered or abandoned by them pursuant to any court order removing such person from the custody of such parents or parent; or otherwise to the person's legally adoptive parents or parent, or to the administrator for the use and benefit of the adoptive parents or parent; the funds recovered in either case to be free from the claims of creditors.

Tenn. Code. Ann. § 20-5-106.

section 1983 claims on behalf of an estate for violations of a decedent's constitutional rights. *See, e.g., Grady*, 2020 WL 3036891 at *4 ("There is no dispute in this case that as a matter of Tennessee law, any § 1983 claim [the decedent] had against Defendants survived his death."); *see also Claybrook v. Birchwell*, 199 F.3d 350, 358 n.7 (6th Cir. 2000) (section 1983 claims of a decedent can be vindicated by the estate under Tennessee law).

One exception to Tennessee's survival statute is that "actions for wrongs affecting the character" do not survive. *See* Tenn. Code. Ann § 20-5-102. In this context, the Tennessee Supreme Court has construed malicious prosecution as a wrong affecting the character. *See Bolin v. Stewart*, 66 Tenn. 298, 300 (1874); *Just. v. Clinard*, 142 Tenn. 208, 217 S.W. 663, 663 (1920) (citing *Bolin*); *Bowman v. Hart*, 161 Tenn. 402, 33 S.W.2d 58, 59 (1930) (same); *Stockdale v. Helper*, No. M2022-00846-COA-R3-CV, 2024 WL 2045341, at *4 (Tenn. Ct. App. May 8, 2024) (citing *Hart*).[6] The Sixth Circuit's characterization of "*all* § 1983 claims as personal injury actions" for survivorship purposes, *Crabbs*, 880 F.3d at 295 (emphasis added), leads this Court to treat a malicious prosecution claim *under § 1983 in particular* as one for personal injury, rather than as one "affecting the character." The upshot is that Tennessee's exception to survivorship does not apply to claims for malicious prosecution claims brought specifically under section 1983, and that such claims therefore survive the decedent's death. *See Est. of Sanders v. Jones*, 362 F. Supp. 3d 463, 467 (W.D. Tenn. 2019).

Here, the SAC contains two counts for malicious prosecution: Count II, which is grounded in section 1983, and Count V, which is grounded in the Federal Tort Claims Act. For the reasons

---

[6] In a case from 1927, the Tennessee Court of Appeals held that this exception applies also to claims for false arrest and false imprisonment. *See Witt v. Krichbaum*, 5 Tenn. App. 48, 51 (1927).Although the allegations of the SAC would seem potentially to lend themselves to a claim of false arrest and/or a claim of false imprisonment, the SAC does not actually bring claims for either false arrest or false imprisonment.

discussed above, the Court therefore finds that Count II survived Mr. Garrett's death under Tennessee's survival statute—but that Count V did not, because it (unlike Count II) is subject to Tennessee's exception to survivorship.

In light of the above, the Court finds that Tennessee law contemplates that an estate can be injured by harms that a defendant inflicts on the decedent while the decedent is alive. Thus, Mr. Garrett's estate can stand in his shoes and trace its (imputed) injuries to the alleged acts of Defendants, except as to Count V.[7] Consequently, the Court rejects Defendants' standing arguments, except as to Count V. Accordingly, the Court finds that it does not lack subject-matter jurisdiction over the SAC's claims grounded in federal law, except for Count V, which will be dismissed.

B. Capacity

Because Defendants bring their Motions solely under Rule 12(b)(1) (*see generally* Doc. No. 80; Doc. No. 87), the Court will not address the issue of capacity at this time. *See Certain Interested Underwriters at Lloyd's, London, England v. Layne*, 26 F.3d 39, 43 n.1 (6th Cir. 1994) ("Rule 17[] is not jurisdictional and relates only to the proper parties and the capacity to sue."); *Miller v. City of Cincinnati*, 870 F. Supp. 2d 534, 538 (S.D. Ohio 2012) ("Because capacity to sue is not jurisdictional, it should not be analyzed as part of a motion to dismiss for lack of jurisdiction."); *Srock v. United States*, No. 04-CV-72788-DT, 2006 WL 2460769, at *4 n.6 (E.D.

---

[7] Without expressing an opinion on any questions related to capacity—which, as discussed below, the Court declines to address herein—and assuming (consistent with Plaintiff's original complaint in this case) that Mr. Garrett had no spouse at the time of his death, the Court further agrees with Plaintiff's argument, (Doc. No. 86 at 9), that the right of action passed to Plaintiff as the sole child of Mr. Garrett. Contrary to Plaintiff, however, the Court believes that such passage occurred not directly under Tennessee Code Annotated section 20-5-106 (which is inapplicable here because it applies only to causes of action for injuries that caused the decedent's death), but rather under section 25-5-102, which is applicable here and incorporates the scheme of section 25-5-106. This does not change that any right to assert a claim for malicious prosecution, other than under section 1983, abated when Mr. Garrett died.

Mich. Aug. 23, 2006) (rejecting attempt to classify motion challenging capacity to sue as one brought under Rule 12(b)(1)).[8]

### III. Supplemental Jurisdiction

"Under 28 U.S.C. § 1367(a), the district court has supplemental jurisdiction over all state claims that are so related to the federal claims that they form a part of the same case or controversy." *Scott v. Churchill*, 225 F.3d 659 (6th Cir. 2000); *see Allen v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, No. 3:23-CV-00636, 2025 WL 684399, at *2 (M.D. Tenn. Mar. 3, 2025) (same). "State and federal law claims are part of the 'same case or controversy' if they 'derive from a common nucleus of operative fact.'" *Harris v. Matti*, No. 3:14-CV-732-DJH, 2015 WL 3581125, at *2 (W.D. Ky. June 5, 2015) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)).

Here, the SAC's sole state-law claim (Count VII) is based on the same set of facts as the remaining six counts anchored in federal law. (*See generally* Doc. 67). Accordingly, the Court finds that the state claim is sufficiently related to the federal claims to warrant the exercise of supplemental jurisdiction. *See Aquilina v. Wrigglesworth*, 759 F. App'x 340, 348 (6th Cir. 2018) (federal courts have supplemental jurisdiction over state claims arising from the same set of facts as federal claims); *Hudgins Moving & Storage Co. v. Am. Exp. Co.*, 292 F. Supp. 2d 991, 1001 (M.D. Tenn. 2003) (same); *Harris*, 2015 WL 3581125 at *2 (same). In addition, Defendants make no argument (of any kind) against the Court's exercise of supplemental jurisdiction. More to the point, Defendants make no argument geared to the present circumstances; that is, they do not argue that if (as has proven to be the case, contrary to Defendants' wishes) the Court finds that it has

---

[8] This rationale also applies to the Metro Defendants' relation-back arguments (*see* Doc. No. 88 at 7–10; Doc. No. 92 at 3–4) because these arguments are closely related to the issue of capacity. *See Holt v. Target Corp.*, No. 3:20-CV-0824, 2021 WL 2389476, at *6 (M.D. Tenn. May 6, 2021), *report and recommendation adopted*, No. 3:20-CV-00824, 2021 WL 2386124 (M.D. Tenn. June 10, 2021).

subject matter jurisdiction over at least one federal claim, the Court should decline to exercise supplemental jurisdiction over Count VII.

Therefore, the Court will exercise supplemental jurisdiction over Count VII.

<u>CONCLUSION</u>

For the reasons discussed herein, the United States' Motion (Doc. No. 80) and the Metro Defendants' Motion (Doc. No. 87) will be granted in part and denied in part. Counts I, II, III, IV, VI, and VII will remain pending, and Count V will be dismissed.

An appropriate accompanying order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE