IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DEANA WATSON, *as Independent Administrator of the Estate of* CLAUDE GARRETT, *deceased*,<br><br>Plaintiff,<br><br>v.<br><br>Current and/or Former Nashville Metropolitan Fire Department Marshalls KENNETH PORTER, OTIS JENKINS, and PATRICK HUNT, Current and/or Former Nashville Metropolitan Police Officers WILLIAM MICHAEL ROLAND, DAVID MILLER, and DESMOND CARTER, Current and/or Former ATF Agent JAMES COOPER, and THE UNITED STATES OF AMERICA,<br><br>Defendants. | ) | Case No.: 3:23-cv-00456<br>JUDGE RICHARDSON<br>MAGISTRATE JUDGE FRENSLEY |

**DEFENDANTS UNITED STATES' AND JAMES COOPER'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56.01, Defendants United States of America and former Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF") Special Agent James respectfully submit their Statement of Undisputed Material Facts in support of their Motion for Summary Judgment.

1. In the early morning of February 24, 1992, a fire broke out at the residence of Claude Garrett and Lori Lance at 114 Broadway in Hermitage, Tennessee. The Nashville Metro Fire Department arrived and found Lori Lance in the utility room located in the rear of the home. Lori Lance died later of smoke inhalation. Exhibit 1, at DEF_RESP_PLTF_1ST_RPD_00002; *see also* Exhibit 2, at MG 000101.

**RESPONSE:**

2. Prior to the fire, the Nashville Police Department had issued an incident report with allegations of domestic violence by Lorie Lance against Claude Garrett. Exhibit 3, Plaintiff's Responses to United States' First Set of Requests for Admission, at ¶ 1 (Feb. 7, 2024).

**RESPONSE:**

3. The night before the fire, Claude Garrett had spent five or six hours at a bar called Daisy Mae's and smoked marijuana. Exhibit 3, Plaintiff's Responses to United States' First Set of Requests for Admission, at ¶ 2 (Feb. 7, 2024).

**RESPONSE:**

4. Mr. Garrett told first responders who arrived on the scene that Ms. Lance was still in the house in the front bedroom. Exhibit 2, at MG 000112.

**RESPONSE:**

5. Firefighters did not find anyone in the front of the house, and when firefighter Patrick Hunt came outside to change an air tank, Mr. Garrett said that Ms. Lance was in the back of the house. Exhibit 2, at MG 000113; Exhibit 4, at MG 000083.

**RESPONSE:**

6. While Nashville firefighter captain Oddis Jenkins was in the house fighting the fire and attempting to save Ms. Lance, he messed with the door to the utility room, discovered it was locked, and it would not come open at first. Exhibit 5, Jenkins Dep. at. 17:11-21, 21:15-22:12.

**RESPONSE:**

7. Jenkins eventually found Ms. Lance on the floor of a utility room laying parallel to the wall, with her head and upper body between a washing machine and the wall with several items laying on top of her. Exhibit 5, Jenkins Dep. at 14:10-12; Exhibit 4, at MG 000084.

**RESPONSE:**

8. Firefighter Hunt could not find a pulse on Ms. Lance. Exhibit 4, at MG 000084.

**RESPONSE:**

9. Claude Garrett sustained only minor injuries, including burns to his forehead and the back of his hand, and singed hair. Exhibit 6, at MG 000047.

**RESPONSE:**

10. Nashville Fire Department fire / arson investigator Kenneth Porter arrived on the scene at 6:30am that morning, began his inspection, collected samples that were sent to TBI, and noticed an unusual burn pattern suggesting to him a liquid accelerant. He also noticed a strong odor of kerosene and identified the fire's point of origin as the living room. He also observed an opaque, five-gallon plastic container on the kitchen floor next to the refrigerator and adjacent to the utility room door; the top of the container was partially melted and it contained kerosene. Exhibit 2, at MG 000114-115.

**RESPONSE:**

11. Mr. Porter was a certified fire investigator and had experience in arson investigations. Exhibit 7, Cooper Dep. at 13:6-8, 32:24-33:2.

**RESPONSE:**

12. Firefighters assisted Mr. Porter in removing debris from the living room floor, and used a hose to wash the area, revealing what appeared to Mr. Porter to be a large pour pattern. The top portion of the aluminum storm door was burned off, indicating a very hot and fast-burning fire. Exhibit 2, at MG 000114-115.

**RESPONSE:**

13. Detective David Miller arrived on the scene at 6:22am, and when he and Detective Mike Roland arrived on the scene, the fire captain told them the fire was of a suspicious nature. Exhibit 6, at MG 000034, 48.

**RESPONSE:**

14. Mr. Porter briefed Detective David Miller and Michael Roland that the fire may have been intentionally set, and Detective Miller requested that Mr. Porter gather all needed physical evidence. Exhibit 2, at MG 000114-115; Exhibit 8, Miller Dep., at 9:15-18, Exhibit 9, Roland Dep. at 126:20-127:8, 132:21-134:25

**RESPONSE:**

15. The detectives began interviewing neighbors and spoke with Lance's family members, who said that Lance's relationship with Garrett was fiery. Exhibit 6, at MG 000048.

**RESPONSE:**

16. Lance's family members and co-workers told detectives that Lance and Garrett regularly argued, that police had been called to their address multiple times, that Garrett became very mean when he was drunk, and that Garrett had once beaten Lance with a cord from a broken

television set and in the same rage had thrown a Christmas tree into the front yard, producing bruises that lasted for days. Exhibit 6, at MG 000035, 41.

**RESPONSE:**

17. Detectives took an initial statement from Garrett, who appeared nervous and fidgety. Exhibit 10, at MG 000053; Exhibit 9, Roland Dep. at 95:2-6.

**RESPONSE:**

18. Garrett explained in a later interview that he and Lance had arrived home around midnight, had a good buzz, fell asleep, and moved to the bedroom. Eventually, Garrett said he woke up to the smell of smoke or the noise of the fire, shouted for Lance, grabbed her hand, and headed for the front door, but she broke away from him and headed to the back of the house. Garrett claimed he injured his hand breaking the front window. Exhibit 4, at MG 000059-65.

**RESPONSE:**

19. After learning from Mr. Porter that the fire might have been intentionally set, detectives obtained a warrant to search the house for evidence. Exhibit 6, at MG 000047.

**RESPONSE:**

20. Because Detectives Miller and Roland were not trained in arson investigations, they needed a fire investigator to determine whether the fire was accidental or intentional. Exhibit 8, Miller Dep. at 110:23-111:19; Exhibit 9, Roland Dep. at 207:16-22.

**RESPONSE:**

21. Detective Miller requested federal ATF Special Agent James Cooper come to the scene to assist in the collection of evidence. Exhibit 6, at MG 000046-47; Exhibit 7, Cooper Dep. at 9:19-20.

**RESPONSE:**

22. On February 24, 1992, James Cooper was a Special Agent with the Bureau of Alcohol, Tobacco and Firearms ("ATF"), and had assisted the Nashville Police Department with other arson investigations. Exhibit 7, Cooper Dep. at 8:7-15; 10:24-11:8.

**RESPONSE:**

23. Cooper's role at this time was as a certified fire investigator to provide assistance to state and local government officers and fire marshals through his training. Exhibit 7, Cooper Dep. at 12:18-23.

**RESPONSE:**

24. During his time at ATF, on average Mr. Cooper would assess twenty-five fires per month. Exhibit 7, Cooper Dep. at 192:9-23.

**RESPONSE:**

25. At 6:20pm the day of the fire, Special Agent Cooper met Detectives Miller, Roland, and District Attorney's Office Investigator Regina West at the scene. Exhibit 6, at MG 000046.

**RESPONSE:**

26. Special Agent Cooper determined the origin of the fire was the living room and the investigators observed that the electrical box had no internal damage and the kitchen stove burners were not burned out. Exhibit 6, at MG 000037-38; Exhibit 2, at MG 000101.

**RESPONSE:**

27. The group observed that a wet bedspread that smelled of accelerant was in front of the refrigerator and had been stuffed partially under it. The group also observed that a clear plastic container was located between the refrigerator and the door to the utility room where Ms. Lance was found, and that it contained some kind of accelerant. Exhibit 6, at MG 000037.

**RESPONSE:**

28. During the walk-through, Mr. Cooper recalled tripping over the bedspread, and asking one of the other investigators, "What is this?" Exhibit 7, Cooper Dep. at 26:17-27:1.

**RESPONSE:**

29. Agent Cooper examined the door of the utility room and observed that the inside of the door was clean, thus appearing that the door was in a closed position when the fire occurred. Exhibit 6, at MG 000037.

**RESPONSE:**

30. In the utility room, the group found a smoke detector laying on the front dryer with no batteries and no front face. Exhibit 6, at MG 000037.

**RESPONSE:**

31. Special Agent Cooper stated that the pour pattern was consistent with a liquid accelerant, and he collected a sample of the baseboard and floor debris. Exhibit 6, at MG 000038.

**RESPONSE:**

32. Detectives interviewed some neighbors of Garrett and Lance, the Alcorns. All three Alcorns noted Garrett did not appear to be trying hard to rescue Lance, and that Garrett had spent the following day after the fire at their house trying to determine what they knew about the fire. Exhibit 4, at MG 000076-81.

**RESPONSE:**

33. Garrett's clothing and evidence recovered from the scene were taken to the Tennessee Bureau of Investigation's laboratory for analysis. Exhibit 1, at DEFUSA_RESP_PLTF_1ST_RPD_00004; Exhibit 2, at MG 000115.

**RESPONSE:**

34. The police and TBI sent the kerosene heater recovered from the house to a professional consultant. Exhibit 6, at MG 000042-43.

**RESPONSE:**

35. Detective Miller presented the case to the grand jury on May 19, 1992, and the grand jury returned a true bill for first degree murder charges against Claude Garrett on May 29, 1992. Exhibit 6, at MG 000040.

**RESPONSE:**

36. Claude Garrett was convicted of arson and murder in 1993 and 2003. Cooper's Answer, D.E. 58 at ¶¶ 116, 120; United States' Answer, D.E. 84 at ¶¶ 116, 120.

**RESPONSE:**

37. Claude Garrett's conviction was vacated on post-conviction by the Nashville District Attorney's Office's Conviction Review Unit. Exhibit 11, Eaton Dep. at 45:19-23, 47:9-21.

**RESPONSE:**

38. James Cooper investigated the 1992 fire and testified at both trials of Claude Garrett. He was retired by the second trial and was subpoenaed to testify. Exhibit 7, Cooper Dep. at 25:8-10, 88:19-89:6; *see also* Exhibit 2, at MG 000101-02.

**RESPONSE:**

39. Director of the CRU Sunny Eaton represented the State during the proceeding vacating Claude Garrett's conviction. Ms. Eaton did not draw conclusions from her investigation about whether Mr. Cooper lied, was not trying to call anybody out for misconduct, did not recommend to District Attorney Glenn Funk that he come out and declare Claude Garrett innocent, could not conclusively say that Claude Garrett was innocent, was not aware of any evidence of a conspiracy by Cooper and the other defendants, was not aware of any evidence suggesting malicious prosecution, and was not aware of anyone planting evidence in the case. Exhibit 11, Eaton Dep. at 21:15-22, 157:13-22, 167:15-18, 170:3-12, 172:9-13, 173:1-7, 205:24-206:1.

**RESPONSE:**

40. Oddis Jenkins, who was 80 years old at the time of his deposition, did not know James Cooper and does not recall speaking with James Cooper. Exhibit 5, Jenkins Dep. at 9:19-20, 45:2-3, 50:6-10.

**RESPONSE:**

41. Kenneth Porter, who was 84 years old at the time of his deposition, did not remember working the Garrett case with Mr. Cooper, and did not recall being at the scene with Mr. Cooper. Exhibit 12, Porter Dep. at 8:15, 36:15-37:5.

**RESPONSE:**

42. Mr. Porter did not conspire to convict Claude Garrett, did not think at all about the case until this lawsuit came up, and did not know whether James Cooper conspired to convict Claude Garrett. Exhibit 12, Porter Dep. at 75:13-76:4.

**RESPONSE:**

43. Desmond Carter, who was 84 years old at the time of the deposition, did not know James Cooper, and had not spoken to Mr. Cooper about anything. Exhibit 13, Carter Dep. at 9:5-6, 21:1-9.[1]

**RESPONSE:**

44. Desmond Carter did not know Claude Garret and did not conspire with anyone else to frame him for arson and murder. Exhibit 13, Carter Dep. at 84:18-85:4.

---

[1] Mr. Carter's deposition proceeded in two parts on April 12, 2024, and July 31, 2024, because of a discovery dispute between the Metro Defendants and Plaintiff. D.E. 83, 85, 105. The movants have attached both transcripts as a combined exhibit for the sake of completeness, but the citations refer to the second volume.

**RESPONSE:**

45. Oddis Jenkins did not know Claude Garrett and did not intend for Mr. Garrett to be charged with a crime. Exhibit 5, Jenkins Dep. at 76:11-13, 77:20-22.

**RESPONSE:**

46. David Miller did not have any vendetta against Claude Garrett, did not conspire with anyone to frame Claude Garrett, did not see anyone tamper with evidence, or see anyone do anything unethical. Exhibit 8, Miller Dep. at 168:19-170:11.

**RESPONSE:**

47. Michael Roland did not conspire to convict Claude Garrett of arson and murder, does not know if anyone else did, did not see anyone put the bedspread in the Garrett house, and was not invested in the outcome of the criminal case either way. Exhibit 9, Roland Dep. at 201:15-202:8, 211:13-212:24, 213:10-23.

**RESPONSE:**

48. Patrick Hunt had never heard of Claude Garrett or Lorie Lance before this fire, did not intend for Mr. Garrett to be charged with a crime, was not personally invested in the outcome of the case, and did not withhold evidence. Exhibit 14, Hunt Dep. at 136:1-141:4, 146:1-14.

**RESPONSE:**

49. Regina Beene (formerly known as West), who worked at the District Attorney's Office, was unaware of any conspiracy to frame Mr. Garrett for arson, did not observe anyone

planting evidence at the scene, and testified that she was the one who found the bedspread in front of the refrigerator. Exhibit 15, Beene Dep. at 5:19-21, 90:22-92:21.

**RESPONSE:**

50. James Cooper never met or spoke with Claude Garrett and did not know Lorie Lance. Exhibit 7, Cooper Dep. at 196:12-18.

**RESPONSE:**

51. James Cooper did not conspire with anyone to convict Claude Garrett, did not do anything illegal during the course of the investigation of this fire or after it, and did not observe anyone else do anything unconstitutional or illegal at any time during the course of this case. Exhibit 7, Cooper Dep. at 198:6-17.

**RESPONSE:**

52. James Cooper never planted evidence and never lied. Exhibit 7, Cooper Dep. at 58:8-16.

**RESPONSE:**

53. James Cooper investigated over 200 fires during his career, but only one (this case) where a deceased victim was recovered from a locked room. Exhibit 7, Cooper Dep. at 84:4-85:3.

**RESPONSE:**

54. Fire science has evolved significantly since 1992 and is continuously evolving. Exhibit 3, Plaintiff's Responses to United States' First Set of Requests for Admission, at ¶ 10 (Feb. 7, 2024).

**RESPONSE:**

55. Throughout his collateral attacks on his conviction, Claude Garrett alleged that James Cooper testified falsely before the jury in 2003 and misled the jury. Exhibit 16, Case No. 3:13-cv-190 (M.D. Tenn.), D.E. 26 at PageID# 5350 (Zellner 9726); *see also* Zellner 8797, 9728, 9878, 10473, 10480.[2]

**RESPONSE:**

56. In the order vacating Garrett's conviction, the post-conviction court found only that new scientific evidence proved that Agent Cooper's testimony was unreliable and false – not that Agent Cooper lied to anyone about anything. Exhibit 17, Order Granting Post-Conviction Relief, Zellner 4095-4113.

**RESPONSE:**

57. On October 24, 2022, Claude Garrett filed his SF-95 with ATF. Exhibit 18, SF-95.

**RESPONSE:**

58. Claude Garrett died in October 2022 after his release. Exhibit 19, Watson Dep. at 156:19-20, 188:3-5, 255:23-25.

**RESPONSE:**

---

[2] As explained in the accompanying Memorandum of Law, these are pleadings in the public record and the Court can take judicial notice of what they say and allege. *See United States v. White*, 58 F.4th 889, 897 n.4 (6th Cir. 2023); *Robinson v. Woods*, 901 F.3d 710, 713 n.1 (6th Cir. 2018); *Granader v. Pub. Bank*, 417 F.2d 75, 83 (6th Cir. 1969); *Garavaglia v. United States*, 648 F. Supp. 3d 887, 894 (E.D. Mich. 2022).

59. Plaintiff Deana Watson appeared on a television program called *Reasonable Doubt*. Exhibit 20, Plaintiff's Responses to United States' Second Set of Requests for Admission, at ¶ 1 (July 19, 2024).

**RESPONSE:**

60. On *Reasonable Doubt*, Claude Garrett provided a phone interview to the show while incarcerated, described himself as a drinker and petty criminal prior to his incarceration, stated that he had consumed at least twelve beers and smoked marijuana the night of the fire, and described his relationship with Lorie Lee Lance as "fiery." Exhibit 20, Plaintiff's Responses to United States' Second Set of Requests for Admission, at ¶¶ 3, 4, 17, 23 (July 19, 2024).

**RESPONSE:**

61. Plaintiff Deana Watson has no personal knowledge of whether Claude Garrett committed any crimes in February 1992 and has not conducted any investigation into Claude Garrett's criminal case or this lawsuit apart from speaking with Garrett's attorneys. Exhibit 3, Plaintiff's Responses to United States' First Set of Requests for Admission, at ¶ 6 (Feb. 7, 2024); Exhibit 21, Plaintiff's Responses to United States' First Set of Interrogatories, at ¶ 6 (Feb. 7, 2024).

**RESPONSE:**

Respectfully submitted,

ROBERT MCGUIRE
Acting United States Attorney
Middle District of Tennessee

s/ Michael Tackeff
ANICA C. JONES, B.P.R. # 025325
MICHAEL C. TACKEFF, B.P.R. #036953
KIMBERLY S. VEIRS, B.P.R. #034811
Assistant United States Attorneys
719 Church Street, Suite 3300
Nashville, TN 37203
Telephone: (615) 736-5151
Email: michael.tackeff@usdoj.gov
kimberly.veirs@usdoj.gov
anica.jones@usdoj.gov
*Attorneys for the United States*

TUNE, ENTREKIN & WHITE, P.C.
s/ Peter J. Strianse
PETER J. STRIANSE
Capitol View
500 11th Avenue North, Suite 600
Nashville, TN 37203
Email: pstrianse@tewlawfirm.com
*Attorney for James Cooper*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 23, 2025, a copy of the foregoing was filed electronically. A copy will be sent to the following, if registered, by operation of the Court's electronic filing system. If not registered, a copy was sent by United States first class mail, postage prepaid, to the following:

| | |
|---|---|
| Kathleen T. Zellner<br>Nicholas Curran<br>Joanna P. Kluzowska<br>Kathleen T. Zellner & Associates, P.C.<br>4580 Weaver Parkway, Suite 204<br>Warrenville, IL 60555<br>Email: attorneys@zellnerlawoffices.com<br>Email: nick@zellnerlawoffices.com | Kyle F. Mothershead<br>Relentless Advocacy, PLLC<br>7000 Executive Center Drive, Suite 240<br>Brentwood, TN 37027<br>Email: kyle@relentlesslaw.com |
| Melissa S. Roberge<br>John W. Ayers<br>Michael R. Dohn<br>Metropolitan Legal Department<br>P.O. Box 196300<br>Nashville, TN 37219<br>Email: melissa.roberge@nashville.gov<br>Email: will.ayers@nashville.gov<br>Email: michael.dohn@nashville.gov | Peter J. Strianse<br>Tune, Entrekin & White, P.C.<br>Capitol View<br>500 11th Avenue North, Suite 600<br>Nashville, TN 37203<br>Email: pstrianse@tewlawfirm.com |

s/ Michael Tackeff
MICHAEL C. TACKEFF
Assistant United States Attorney